Stephen M. Sansom, #10678
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: (801) 799-5897
Fax: (801) 214-1866
SMSansom@hollandhart.com

Timothy P. Getzoff (admitted *pro hac vice*)
HOLLAND & HART LLP
One Boulder Plaza, 1800 Broadway, Suite 300
Boulder, CO 80302-5289
Phone: (303) 473-2734
Fax: (303) 473-2720
tgetzoff@hollandhart.com

Benjamin N. Simler (admitted *pro hac vice*)
HOLLAND & HART LLP
P.O. Box 8749
Denver, CO 80201-8749
Phone: (303) 295-8419
Fax: (303) 975-5341
bnsimler@hollandhart.com

*Attorneys for Defendant SGT, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| Christine Martin,<br><br>            Plaintiff,<br><br>vs.<br><br>SGT, Inc.,<br><br>            Defendant. | **DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>No. 2:19-cv-00289-RJS<br><br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ........................................................................................................ ii

I.  Relevant Facts ..........................................................................................................1

II.  Argument .................................................................................................................3

    A.  TGT Is Not Subject to Personal Jurisdiction. .........................................5

        1.  TGT Is Not Subject to *General* Jurisdiction Here. ....................6

        2.  TGT Is Not Subject to *Specific* Jurisdiction Here.......................7

    B.  The District of Utah Is Not a Proper Venue. ..........................................11

    C.  Plaintiff's Claims Fail on the Face of the FAC......................................12

        1.  Plaintiff's Third and Fourth Causes of Action Fail. ..................12

            a)  Because A Copyright Registration Was Not Obtained Before Plaintiff Instituted This Suit, Infringement Claims Are Barred.....................................................................12

            b)  Plaintiff Fails To Plead Facts For A Plausible Claim Of Vicarious Copyright Infringement...................................13

            c)  Plaintiff Fails To Plead Facts Upon Which Lies A Plausible Claim Of Contributory Copyright Infringement............................14

        2.  Plaintiff's Second Cause of Action Is Moot. .............................16

        3.  Plaintiff's First Cause of Action Is Preempted. ........................16

III.  Conclusion ............................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>CASES</u>

*Berneike v. CitiMortgage, Inc.*,
  708 F.3d 1141 (10th Cir. 2013) ........................................................................12

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017)........................................................................................6, 7

*Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*,
  137 S. Ct. 1773 (2017)........................................................................................8

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)........................................9

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)............................................................................................6

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
  514 F.3d 1063 (10th Cir. 2008) ....................................................................5, 7, 11

*Duplan v. Harper*,
  188 F.3d 1195 (10th Cir. 1999) ......................................................................13

*Ehat v. Tanner*,
  780 F.2d 876 (10th Cir. 1985) ........................................................................16

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019)....................................................................................12, 13

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) ...................5

*Mai Larsen Designs v. Want2Scrap, LLC*, No. SA-17-CV-1084-ESC,
  2019 WL 2343019 (W.D. Tex. June 3, 2019),
  *reconsideration denied*, No. SA-17-CV-1084-ESC,
  2019 WL 2549228 (W.D. Tex. June 20, 2019) ..................................................13

*Malibu Media, LLC v. Doe*,
  No. 18-CV-10956 (JMF), 2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019) ...............13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)........................................................................................14, 15

*Moos v. Craft Outlet, Inc.*,
  No. CIV-16-750-C, 2017 WL 238445 (W.D. Okla. Jan. 19, 2017) ......................14

*Newsome v. Gallacher,*
     722 F.3d 1257 (10th Cir. 2013) ........................................................................................8

*Old Republic Ins. Co. v. Cont'l Motors, Inc.,*
     877 F.3d 895 (10th Cir. 2017) ..........................................................................................9

Pickett v. Migos Touring, Inc., No. 18-CIV-9775 (AT), 2019 WL 5887742, at *5
     (S.D.N.Y. Nov. 12, 2019) ..................................................................................................13

*Remick v. Manfredy,*
     238 F.3d 248 (3d Cir. 2001) ..............................................................................................7

*Ritchie v. Williams,*
     395 F.3d 283 (6th Cir. 2005) ............................................................................................17

*Savant Homes, Inc. v. Collins,*
     809 F.3d 1133 (10th Cir. 2016) ........................................................................................14

*Schutz v. Thorne,*
     415 F.3d 1128 (10th Cir. 2005) ........................................................................................16

*Seiferth v. Helicopteros Atuneros, Inc.,*
     472 F.3d 266 (5th Cir. 2006) ............................................................................................7

*Ten Mile Indust. Park v. Western Plains Serv. Corp.,* 810 F.2d 1518, 1524 (10th
     Cir. 1987) ..........................................................................................................................5, 6

*Travelers Prop. Cas. Co. of Am. v. Hume Lake Christian Camps, Inc.,* No. 17-
     CV-1600 JLS (KSC), 2018 WL 280025, at *7 (S.D. Cal. Jan. 3, 2018) ..................9

*UAB "Planner 5D" v. Facebook, Inc.,* No. 19-CV-03132-WHO, 2019 WL
     6219223, at *7 (N.D. Cal. Nov. 21, 2019) ........................................................................13

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.,* 924 F.3d 32, 49 (2d Cir.
     2019) ..................................................................................................................................17

*Viesti Assoc., Inc. v. Pearson Educ., Inc.,*
     No. 12-CV-02240-PAB-DW, 2013 WL 4052024 (D. Colo. Aug. 12, 2013) ........................14

*Walden v. Fiore,*
     571 U.S. 277 (2014) ..........................................................................................................11

## STATUTES AND RULES

17 U.S.C. § 106 ......................................................................................................... 16

17 U.S.C. § 301(a) ................................................................................................... 16

17 U.S.C. § 411(a) .............................................................................................. 12, 13

28 U.S.C. 1391(b) ................................................................................................. 11

28 U.S.C. 1400(a) ................................................................................................. 11

Fed.R.Civ.P. 12(b)(1) ............................................................................................. 18

Fed.R.Civ.P. 12(b)(2) ........................................................................................ 1, 18

Fed.R.Civ.P. 12(b)(3) ............................................................................................... 1

Fed.R.Civ.P. 12(b)(6) .................................................................................... 1, 12, 18

After dismissal of her First Amended Complaint ("FAC"), Plaintiff's third attempt at pleading drops Timothy Tasker as a defendant, drops all her state law tort claims, and adds new allegations in an attempt to show personal jurisdiction over Defendant SGT, Inc. ("TGT"). However, notwithstanding the new allegations of contacts with Utah, the Second Amended Complaint ("SAC") still fails to overcome the substantial deficiencies of both the original Complaint and the FAC.  As explained below, TGT respectfully moves the Court to dismiss the SAC (1) under Rule 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue; and (2) under Rule 12(b)(6), for failure to plausibly set forth claims for relief.

## I.   RELEVANT FACTS

According to the SAC, Plaintiff Christine Martin has been a Utah resident since 1990. SAC ¶1.  Plaintiff and TGT's principal Timothy Tasker first met while both were working for another company, High Range Designs, in Jackson, Wyoming.  SAC ¶30; Declaration of Timothy Tasker ("Tasker Decl.") ¶3.  In 1999, Mr. Tasker on behalf of his company TGT, a Wyoming corporation, affirmatively reached out to Plaintiff to ask whether TGT could use Plaintiff's artwork on a line of stickers.  SAC ¶¶2, 8.  The SAC alleges the parties "negotiated and executed a contract" with Plaintiff "in the State of Utah" (SAC ¶9), but the "contract" was (at most) oral (SAC ¶40), and only Plaintiff was "in the State of Utah" when any such contract was agreed upon. Tasker Decl. ¶4. Thereafter, Plaintiff created artwork that she allegedly "licensed" to TGT under an oral agreement (the "TGT Artwork"), for which TGT agreed to pay a flat fee. SAC ¶ 39.

Mr. Tasker sharply disputes the allegations in the SAC that he traveled to Utah "multiple times a year to select artwork," stayed at Martin's home in Utah while he was conducting

business "on at least forty occasions," or that he ever engaged in business with Plaintiff during his visits. *See* Tasker Decl. ¶¶13-14.

According to the SAC, although later Plaintiff attempted to renegotiate with TGT to receive an ongoing royalty (SAC ¶55), the oral License that Plaintiff and TGT allegedly entered into and that remained in place from 1999 until 2019 only required TGT to pay one-time fees for her work, which TGT paid. SAC ¶¶39-40.[1] Plaintiff also allegedly assisted TGT's in-house designer, who was located in Wyoming, in modifying the TGT Artwork for TGT's business purposes. SAC ¶ 54.

The SAC alleges that Plaintiff provided TGT with the TGT Artwork under a non-exclusive and non-transferrable license, and not as part of a work-for-hire agreement, such that Plaintiff was vested with all copyrights in the TGT Artwork. SAC ¶¶ 39, 41-42. TGT filed applications for and obtained copyright registration certificates from the U.S. Copyright Office for some of the TGT Artwork. SAC ¶¶ 70; Tasker Decl ¶17. In filing these applications, TGT retained the legal assistance of an attorney located in Utah (SAC ¶70), because TGT could not find an attorney with copyright experience in Jackson, Wyoming. Tasker Decl. ¶¶17-18

The FAC alleges that in 2015 Plaintiff had an opportunity to license the TGT Artwork to another entity, Lakeshirts, with which she had an existing business relationship, but that she elected to forego out of her feeling of loyalty to TGT (for whom her husband also worked). SAC

---

[1] The SAC also refers to a separate agreement, operative from 2002–2009, for a line of "Stylie Stickers," under which an ongoing royalty was paid until that line of products was discontinued many years ago. SAC ¶ 57. The SAC also alleges "other business dealings" concerning Plaintiff's creation of business cards, stationary and envelopes that Mr. Tasker traveled to Utah to pick up. SAC ¶¶46-48. None of these allegations relate to any of the claims in this case.

¶¶66-68. In February 2019, TGT sold all of its assets to Lakeshirts, which included the fully-paid-up License for the TGT Artwork. SAC ¶¶74-76; Tasker Decl ¶19. Despite her own belief that the License was fully paid-up and that TGT had assigned the License to Lakeshirts, Plaintiff then purported to terminate the License by written notice to TGT. SAC ¶84.  Despite having her own direct communications with Lakeshirts on this issue (SAC ¶¶77-78), Plaintiff claims that TGT failed to inform Lakeshirts of her "termination of the license." SAC ¶¶ 85-87.

The SAC further alleges that on or after June 18, 2019, *after* this suit was initiated, she obtained a certificate of registration from the U.S. Copyright Office, No. VA 2-155-006 (the '006 Registration"). SAC ¶ 88; Exhibit A to SAC. The FAC alleges that Lakeshirts has made copies of the work identified in that registration without Plaintiff's permission, and alleges that Defendants induced Lakeshirts' alleged infringement of that copyright by having sold TGT's assets to Lakeshirts. SAC ¶¶ 89–90.

TGT's state of incorporation and principal place of business is Wyoming, and TGT has never had employees, offices, or property located in Utah.  Tasker Decl. ¶¶2,6-8.  TGT is not licensed to do business in Utah and has never paid (or been required to pay) taxes in Utah. *Id.* ¶9.

## II.    <u>ARGUMENT</u>

Plaintiff's ever-shifting theories of liability, now in their third iteration in the SAC, indicate that this is a case in search of a viable claim for relief.  The gravamen of Plaintiff's claims hinge on TGT's sale of its business to Lakeshirts in early 2019.  Plaintiff was not a party to this transaction, yet she suspects that TGT transferred assets to Lakeshirts (i.e., an alleged oral non-transferable license to her artwork) that TGT was not allowed to transfer.  Plaintiff makes no

claim that TGT failed to pay her any sums for TGT's use her artwork or that TGT itself has infringed or misused her artwork.  Since the asset sale, TGT is making no use of her artwork and makes no claim to ownership of her artwork.  Any such use or claim since the sale would be by Lakeshirts, the owner of all TGT's assets, and not TGT.  If Lakeshirts is making use of Plaintiff's artwork without proper payment or authorization, her claim is against Lakeshirts.  If TGT breached its representations to Lakeshirts (i.e., purported to transfer an asset to which it did not have rights), this could be a claim by Lakeshirts against TGT.  Plaintiff is attempting to insert herself into the middle of a transaction as if she was owed some duty or third-party beneficiary status to the transaction, where none is apparent or even alleged.

The failure of Plaintiff's claims is exposed in her claim of injury or harm, which dovetails with the personal jurisdiction issue.  The entirety of Plaintiff's claimed injury arises from the asset sale from TGT to Lakeshirts, which undisputedly did not involve Plaintiff or Utah.  Whether Plaintiff "could have made more money" (SAC ¶68) if she had made different business decisions at some time in the past does not translate to legally cognizable injuries arising from the asset sale from TGT to Lakeshirts.

Even taking her uncontroverted allegations as true for purposes of this Motion, Plaintiff's claims are implausible on their face for several reasons:

(1) Plaintiff's alleged damages are that Lakeshirts, a non-party, has not been paying royalties to Plaintiff for the TGT Artwork that Lakeshirts acquired in the asset purchase from TGT. SAC ¶¶78, 89. Plaintiff has not alleged that TGT has failed to pay her any amounts owed in connection with the TGT Artwork.

(2) Even if TGT once claimed ownership of the copyrights in some or all the artwork, the SAC is clear that TGT already sold *all* of its assets to Lakeshirts, such that TGT no longer claims any such ownership. SAC ¶¶78-80. If there is any existing dispute over copyright ownership, that dispute is between Plaintiff and Lakeshirts; there is no live dispute between Plaintiff and Defendant regarding her artwork.

(3) To the extent Plaintiff's claims are premised on Defendants "selling" Plaintiff's artwork, her claims are nothing more than recast and preempted claims for copyright infringement. Plaintiff cannot bring any claim for copyright infringement in this suit, because she did obtain any certificates of registration for any of her alleged copyrights prior to initiating this suit.

Apart from these flaws, Defendant is not subject to personal jurisdiction in this forum.

**A.     TGT Is Not Subject to Personal Jurisdiction.**

Personal jurisdiction over a defendant may be either "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Although the SAC asserts both types over TGT, neither applies.

Plaintiff bears the burden of making a prima facie showing of personal jurisdiction over Defendant. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1070 (10th Cir. 2008). In ascertaining the facts necessary to establish jurisdiction, the district court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by defendant's affidavit. *Ten Mile Indust. Park v. Western Plains Serv. Corp.,* 810 F.2d 1518, 1524 (10th Cir. 1987). Only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true. *Id.; Dudnikov* 514 F.3d at 070 (taking as true

only the "plausible, non-conclusory, and non-speculative facts alleged in [the] complaint"). If

the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor.

*Ten Mile,* 810 F.2d at 1524.

### 1.    TGT Is Not Subject to *General* Jurisdiction Here.

This Court cannot exercise personal jurisdiction over TGT under a general jurisdiction

theory because it is not "essentially at home" in Utah. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct.

1549, 1558 (2017) (*quoting Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014)). Only in an

"exceptional case," where the "corporate defendant's operations in another forum '[are] so

substantial and of such a nature as to render the corporation at home in [the] State,'" will general

jurisdiction be found other than in the corporate defendant's state of incorporation or where its

principal place of business is located. *Id.* at 1558–59 (quoting *Daimler*, 571 U.S. at 139 n.19).

In *BNSF*, the Supreme Court held a defendant that was incorporated and had its principal

place of business in other states was not subject to general personal jurisdiction in Montana, even

though it had 2,000 employees (about 5% of the total) in Montana, owned 2,000 miles of railroad

track (about 6% of its total) in Montana, and generated 10% of its revenues in Montana. *Id.* at

1554, 1559.

Here, the facts here are a far cry from those held insufficient for general jurisdiction in

*BNSF*. TGT's state of incorporation and principal place of business is Wyoming. Tasker Decl.

¶2. While TGT has sold products to retailers in Utah, it has never owned property in the state,

never had an office in Utah, never had any employees in Utah, and never generated a substantial

portion of its revenues from Utah. *Id.* ¶¶6-9, 12. Nor has it ever paid or been liable for any taxes

in Utah or ever been registered to do business in the state. *Id.* ¶9. And, while TGT has retained

legal counsel in Utah, it did so only on a limited basis because it was unable to locate qualified counsel with the required expertise in Jackson, Wyoming. *Id.* ¶¶17-18. In short, TGT is not "at home" in Utah and the fact that TGT sold products in Utah, sent payments to and received artwork from Plaintiff who resided in Utah, and purchased some products from Utah is simply not enough to create general jurisdiction. Otherwise, any business that simply sells and advertises its products in a state would be subject to general personal jurisdiction, which is contrary to law. *See BNSF*, 137 S. Ct. at 1554, 1558-59. General jurisdiction over TGT in Utah does not exist.

### 2.    TGT Is Not Subject to *Specific* Jurisdiction Here.

Where specific personal jurisdiction is asserted, the Court should assess personal jurisdiction on a claim-by-claim basis. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("[T]hat the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [Plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [Plaintiff's] other claims.").

Specific jurisdiction "requires, first, that the out-of-state defendant must have purposefully directed its activities at residents of the forum state, and second, that the plaintiff's injuries must arise out of defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (internal quotations and citation omitted). For purposes of the first prong, "[i]n the tort context, [the Court] ask[s] whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a

transaction in the forum state." *Id.* For purposes of the second prong, a claim "arises out of" forum-related activities if the Plaintiff's alleged injuries would not have arisen "but for" the forum-related activities, or if the forum-related activities are relevant to proving the elements of the claims. *See Newsome v. Gallacher*, 722 F.3d 1257, 1269 (10th Cir. 2013); *Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) ("For a court to exercise specific jurisdiction over a claim there must be an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." (internal quotations, alterations, and citations omitted)).

On the first prong, with respect to the copyright (tort) claims (the third and fourth causes of action), there are no alleged contacts by which TGT is alleged to have purposefully directed any of its relevant activities at Utah.  Instead, Plaintiff's allegations of specific jurisdiction can be found in paragraphs 7-13 of the SAC and those paragraphs only relate to Plaintiff's contract claims.  The alleged direct infringement (reproduction of the subject work of the '006 Registration) is not alleged to have occurred in Utah—rather, it is alleged to have been committed by Lakeshirts, a Minnesota company. SAC ¶89. Nor are there any allegations that TGT's vicarious or contributory conduct occurred in Utah—rather, all allegations of wrongdoing occurred in Wyoming when TGT negotiated with and entered into an agreement with Lakeshirts in Minnesota for the sale of TGT's assets, or when TGT received demands sent by Plaintiff to Wyoming and refused to acquiesce to them. *See* SAC ¶¶ 84-91, 105-136.

With respect to the contract claims (the first and second causes of action), the uncontroverted allegations do not demonstrate TGT purposefully availed itself of Utah's laws and protections. Instead, the contractual relationship between TGT and Plaintiff, longstanding though it was, began, was negotiated, and was performed by TGT in and from Wyoming, and it is not enough that Plaintiff happened to reside in Utah. *See* Tasker Decl. ¶4; *see also Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 909–14, 917–18 (10th Cir. 2017) (ongoing contractual relationship between plaintiff and defendant, along with defendant's other forum-related contacts, insufficient to subject defendant to jurisdiction in plaintiff's home forum where no allegation that defendant specifically sought out plaintiff's business in plaintiff's home state).

Furthermore, the fact that TGT hired a Utah-based attorney to assist in filing for federal copyright registrations with the United States Copyright Office is not sufficient to find purposeful availment either. *See Travelers Prop. Cas. Co. of Am. v. Hume Lake Christian Camps, Inc.*, No. 17-CV-1600 JLS (KSC), 2018 WL 280025, at *7 (S.D. Cal. Jan. 3, 2018) (finding no purposeful availment when party's counsel resided in the district). TGT's selection of counsel in Utah, because experienced counsel was not available in Jackson, Wyoming, is precisely the type of "random, fortuitous, or attenuated contacts" that are insufficient to find purposeful availment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (The purposeful direction requirement "ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, ...") (quotations omitted).

Similarly, the additional contacts alleged in the SAC—selling stickers to Utah businesses or sending checks to and spending the night in Plaintiff's home—also are attenuated and fortuitous to the point that does not constitute purposeful availment. *See id.*

While the first prong may be the subject of debate or controverted facts, the second prong is relatively clear.  Plaintiff's alleged injuries (to the extent they exist at all) do not arise from TGT's alleged contacts. In paragraph 12 of the SAC, Plaintiff alleges that TGT is subject to specific jurisdiction because "TGT breached its contract with Martin and otherwise violated Martin's rights by:

     a.     Claiming ownership to the artwork that Martin created and that TGT used on its stickers;

     b.     Obtaining federal copyright registrations for that artwork;

     c.     Assigning TGT's rights under the contract (including the right to use Martin's artwork), and/or ownership to the works themselves, to a third party; and

     d.     Refusing to notify that party that Martin had cancelled TGT's license to use the artwork and thus cancelled any rights the third party had to use the artwork."

However, none of these actions are alleged to have occurred in Utah, nor could they be. As shown previously, TGT is a Wyoming company with its place of business in Wyoming. Therefore, any conduct asserting ownership of artwork, obtaining federal copyright registrations, assigning rights, or refusing to notify other parties all flow entirely from TGT's Wyoming-centered and Wyoming-based actions (and, to some extent, Minnesota where Lakeshirts is located).  Similarly, as explained above, the alleged copyright claims all arise from conduct that occurred outside Utah either by Lakeshirts in Minnesota in using the artwork, or by TGT in

Wyoming when it sold its assets to Lakeshirts or when it later received demands sent by Plaintiff but refused to acquiesce to them. *See* SAC ¶¶ 84-91 and 105-136.

Plaintiff has not alleged how her injuries arose from TGT's alleged contacts with Utah, which consist of occasionally staying at her home, sending her letters or checks, storing merchandise at her house, selling stickers to Utah-based businesses, picking out which artwork to use on stickers, or hiring an attorney in Utah. None of these alleged contacts caused her alleged injury. Because Plaintiff fails to allege how these specific alleged contacts by TGT caused her harm, they are insufficient to subject TGT to specific personal jurisdiction in this Court. *See Dudnikov*, 514 F.3d at 1071("[P]laintiff's injuries must arise out of defendant's forum-related activities.").

In short, Plaintiff's alleged injuries as framed by the SAC were felt in Utah because she happens to reside in Utah. However, none of TGT's alleged purposeful contacts with Utah are the cause of any such injuries; instead, all of TGT's alleged conduct that gave rise to her alleged injuries occurred *where TGT was located*, in Wyoming, by virtue of selling its business to Lakeshirts and the other alleged conduct. Plaintiff's residence and alleged suffering of harm in Utah is legally insufficient. *See Walden v. Fiore*, 571 U.S. 277, 285–86 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction ...").

### B.    The District of Utah Is Not a Proper Venue.

For essentially the same reasons as above, this Court is also not a proper venue for any of Plaintiff's claims. Venue is improper under 28 U.S.C. § 1391(b) or 28 U.S.C. § 1400(a), because

Defendant is not subject to personal jurisdiction here, because there is no factual allegation that Defendant (or Lakeshirts) committed any act of infringement in this district, and because no substantial portion of the alleged events giving rise to the claims—the transfer of TGT's assets to Lakeshirts—did or could have occurred here.

### C.      Plaintiff's Claims Fail on the Face of the FAC.

"To survive dismissal under Rule 12(b)(6) for failure to state a claim, plaintiffs must nudge their claims across the line from conceivable to plausible. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144 (10th Cir. 2013) (internal quotations, alterations, and citations omitted). The facts alleged do not plausibly show that Plaintiff is entitled to relief from either Defendant on any of her claims.

### 1.      Plaintiff's Third and Fourth Causes of Action Fail.

Plaintiff's Third and Fourth Causes of Action, for contributory and vicarious copyright infringement, fail on their face for several reasons.

### a)      Because A Copyright Registration Was Not Obtained Before Plaintiff Instituted This Suit, Infringement Claims Are Barred

Foremost, the copyright claims are barred from this lawsuit because Plaintiff failed to obtain a copyright registration *prior to initiating* this action. It is now settled law that a lawsuit for copyright infringement cannot be commenced until *after* a registration has issued. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (citing 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made")).

Courts considering the issue at bar after *Fourth Estate* have concluded that because registration is a statutory prerequisite to filing suit, *see Fourth Estate*, 139 S. Ct. at 887, the registration-before-suit requirement *cannot be circumvented by filing an amended complaint* after a certificate of registration is issued. *See UAB "Planner 5D" v. Facebook, Inc.*, No. 19-CV-03132-WHO, 2019 WL 6219223, at *7 (N.D. Cal. Nov. 21, 2019) ("A plaintiff cannot cure its failure to meet the preconditions set forth in 17 U.S.C. § 411(a) by amending its pending complaint.").[2]

This lawsuit was initiated by the filing of Plaintiff's initial Complaint, on April 29, 2019. *See* Dkt. No. 2. The only alleged copyright registration certificate (the "'006 Registration") was issued nearly two months after this suit was initiated, sometime on or after June 18, 2019. *See* Ex. A to SAC. Nor does the SAC allege that Plaintiff ever sought any other registration of her alleged copyrights. Consequently, at least for this action, Plaintiff is barred from any claims for copyright infringement, no matter how styled.

> **b)    Plaintiff Fails To Plead Facts For A Plausible Claim Of Vicarious Copyright Infringement.**

Apart from the statutory bar explained above, the SAC does not allege a plausible claim of vicarious copyright infringement. "In order to prove a claim of vicarious infringement,

---

[2] *See also Pickett v. Migos Touring, Inc.*, No. 18-CIV-9775 (AT), 2019 WL 5887742, at *5 (S.D.N.Y. Nov. 12, 2019) ("a copyright infringement claim will be dismissed where the allegedly infringed work … was not registered at the time the original complaint was filed"); *Mai Larsen Designs v. Want2Scrap, LLC*, No. SA-17-CV-1084-ESC, 2019 WL 2343019, at *5–6 (W.D. Tex. June 3, 2019), *reconsideration denied*, No. SA-17-CV-1084-ESC, 2019 WL 2549228 (W.D. Tex. June 20, 2019); *Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019) ("[A] prematurely filed suit must be dismissed notwithstanding a plaintiff's post-registration amendment.").  *Cf. Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("a premature complaint cannot be cured through amendment, but instead, plaintiff must file a new suit").

Plaintiff must prove (1) a direct infringement, (2) that the vicarious infringer had the ability to control or supervise the alleged direct infringement, (3) that the vicarious infringer failed to exercise that ability, and (4) had a direct financial interest in the infringing activity." *Moos v. Craft Outlet, Inc.*, No. CIV-16-750-C, 2017 WL 238445, at *1 (W.D. Okla. Jan. 19, 2017), citing *Viesti Assoc., Inc. v. Pearson Educ., Inc.*, No. 12-CV-02240-PAB-DW, 2013 WL 4052024, at *7 (D. Colo. Aug. 12, 2013); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One … infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.").

Here, Plaintiff has at best alleged only the first of these elements—that Lakeshirts is infringing her copyright by reproducing copies of the work subject to the '006 Registration. The SAC does not meet the second or third elements, which require that TGT have the ability *to supervise and control* the actions of Lakeshirts. The SAC provides no such allegations, nor any facts from which such a conclusion could plausibly be drawn. And on the final element, the SAC effectively concedes that Defendants have not profited from any *infringement*, but instead only from the earlier sale of TGT's assets to Lakeshirts. SAC ¶131 (asserting Defendants' profits to be "the money Defendants received through its [*sic*] transaction with Lakeshirts").

### c) Plaintiff Fails To Plead Facts Upon Which Lies A Plausible Claim Of Contributory Copyright Infringement

Nor has Plaintiff viably alleged a claim for contributory infringement. "Contributory copyright infringement … occurs when the defendant causes or materially contributes to another's infringing activities and knows of the infringement." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1146 (10th Cir. 2016) (citation and internal quotations omitted). To constitute contributory infringement, however, the defendant must have specifically intended for

infringement to occur at the time of its alleged contributory acts; mere knowledge that infringement might or would occur is insufficient to create contributory liability.  *See, e.g.*, *Grokster* 545 U.S. at 930.  ("One infringes contributorily by *intentionally* inducing or encouraging direct infringement" (emphasis added)); *id.* at 937 ("mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability").

Here, the only pertinent allegations are: (1) TGT sold its business to Lakeshirts in February, 2019, (2) Plaintiff informed TGT after the sale that she was terminating any licenses, (3) TGT purportedly "did not notify" Lakeshirts of the termination, and (4) Lakeshirts has been using the artwork.  SAC, ¶¶76, 84-89.  Plaintiff admits that she has been in direct contact with Lakeshirts regarding the sale and the artwork (SAC ¶¶77-78), so it's not clear why TGT needed to tell Lakeshirts anything, let alone how TGT had a duty to inform Lakeshirts of anything. Moreover, Plaintiff does not allege that TGT *knows* of any on-going use of the artwork by Lakeshirts, let alone that TGT is *intending* that Lakeshirts use the artwork.  There is no allegation that TGT has any control or knowledge of how Lakeshirts is running its business.  Plaintiff's claim that TGT is intentionally inducing or encouraging any such infringement by Lakeshirts is not plausibly alleged.

Moreover, the SAC concedes that the alleged License was in effect and had not been terminated *at the time* of TGT's negotiations with and asset sale to Lakeshirts—the allegedly contributory acts.  SAC ¶¶76, 84.  The allegation that Plaintiff purported to terminate the license *after* the sale, which allegedly made Lakeshirts an infringer at that point, cannot logically have been a situation that was encouraged or induced by TGT.

### 2. Plaintiff's Second Cause of Action Is Moot.

"Constitutional mootness exists when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Schutz v. Thorne*, 415 F.3d 1128, 1138 (10th Cir. 2005) (internal quotations and citation omitted). Here, the SAC makes clear that TGT sold all its assets—and, in particular, any claim it may have had to the TGT Artwork or the License—to Lakeshirts in February 2019. *See, e.g.*, SAC ¶¶ 74–76.  In short, TGT makes no claim to any ownership interest in Plaintiff's artwork.  If there is any live dispute over such ownership or rights, it lies between Plaintiff and Lakeshirts.  The SAC thus concedes the mootness of her ownership claim as against TGT: even if an ownership dispute might once have existed as between Plaintiff and TGT, any dispute between them was extinguished before this suit was initiated. If there is any current dispute about ownership, it could only be between Plaintiff and Lakeshirts.

### 3. Plaintiff's First Cause of Action Is Preempted.

Plaintiff's First Cause of Action, for breach of contract, is preempted by the Copyright Act. The Copyright Act grants "the owner of copyright[s] … the exclusive rights to" control the distribution and reproduction of their copyrighted works, *see* 17 U.S.C. § 106, and preempts all causes of action "within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a).

Claims relating to the allegedly unauthorized reproduction or distribution of graphic works consistently have been held to be preempted. *See, e.g.*, *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985) (claims "to recover for damage flowing from [the] reproduction and distribution" of an artistic work are "equivalent to copyright" and therefore pre-empted).

Claims for breach of contract that are essentially equivalent to those arising under the copyright laws, too, are preempted. *See, e.g.*, *Ritchie v. Williams*, 395 F.3d 283, 287-88 (6th Cir. 2005) ("The [contract and tort] claims are that [defendant] licensed the songs … to others in violation of the copyrights … of [Plaintiff]. All of these claims are 'equivalent' to infringement claims" and therefore preempted"). *See also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 49 (2d Cir. 2019) (claim for breach of contract preempted where alleged breach was that licensee exceeded scope of copyright license).

Here, Plaintiff's breach of contract claim is that TGT exceeded the scope of its copyright license by obtaining copyright registrations and transferring ownership or TGT's rights to Lakeshirts (SAC ¶ 16), which violated Plaintiff's alleged copyright rights. *See* SAC ¶39(a)-(g) (delineating the alleged "terms" of the "license"). As pled, the alleged breach of this alleged oral license agreement is nothing more than recast claims of copyright infringement by exceeding the scope of the license and violating the rights afforded to her under the Copyright Act. The fact that Plaintiff's SAC (like the FAC before it) attempts to bring copyright infringement claims based on the exact same conduct it claims is a breach of contract only serves to reinforce this conclusion.

## III.   CONCLUSION

Despite the additional allegations set forth in the SAC, Plaintiff still has failed to establish a prima facie case for personal jurisdiction over TGT in Utah. In addition, Plaintiff's four remaining claims continue to suffer from the same fatal flaws that existed in her prior two complaints. For the reasons set forth above, this action should be dismissed under rules 12(b)(1), 12(b)(2), and 12(b)(6).

Dated  December 23, 2019

Respectfully submitted,

*/s/ Timothy P. Getzoff*
Timothy P. Getzoff (admitted *pro hac vice*)
HOLLAND & HART LLP
One Boulder Plaza, 1800 Broadway, Suite 300
Boulder, CO 80302-5289
Phone: (303) 473-2734
Fax: (303) 473-2720
tgetzoff@hollandhart.com

Stephen M. Sansom, #10678
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: (801) 799-5897
Fax: (801) 214-1866
SMSansom@hollandhart.com

Benjamin N. Simler (admitted *pro hac vice*)
HOLLAND & HART LLP
P.O. Box 8749
Denver, CO 80201-8749
Phone: (303) 295-8419
Fax: (303) 975-5341
bnsimler@hollandhart.com

**ATTORNEYS FOR DEFENDANT SGT, INC.**

13959693

-18-