IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTINE MARTIN, an individual,<br><br> Plaintiff,<br><br> v.<br><br>SGT, INC. f/k/a TGT, INC., a Wyoming corporation,<br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00289<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

This action concerns a business relationship and license agreement between Plaintiff Christine Martin and Defendant SGT, Inc., formerly known as TGT, Inc. (TGT).  In her Second Amended Complaint (SAC), Martin asserts causes of action against TGT for breach of contract, declaratory relief, and copyright infringement.[1]  In response, TGT filed a Motion to Dismiss arguing: (1) it is not subject to personal jurisdiction in this court; (2) this is an improper venue; and (3) the SAC fails to state a claim upon which relief can be granted.[2]  For the reasons explained below, TGT's Motion is GRANTED IN PART and DENIED IN PART.

---

[1] *See* dkt. 53.

[2] *See* dkt. 58.

## BACKGROUND[3]

### The Parties

Martin, a Utah resident, is an artist who creates artwork featured on clothing, glassware, stickers, and other souvenir items.[4]  Martin has resided in Utah since September 1990.[5]

TGT is a corporation organized and existing under the laws of the State of Wyoming.[6] At all relevant times, TGT was owned and operated by Timothy Tasker.[7]

### The Parties' Business Relationship

Sometime around 1998, Martin became acquainted with Tasker.[8]  At that time, Tasker was producing stickers through his company, TGT.[9]  In 1999, Tasker reached out to Martin to ask whether she would allow TGT to use her artwork on its line of stickers.[10]  As a result, Martin and TGT began negotiating an agreement that would allow TGT to use Martin's artwork on its stickers.[11]

The negotiations began in Jackson, Wyoming, but continued and ultimately concluded in Utah.[12]  Specifically, Tasker traveled to Martin's Utah home in 1999 to look at her designs.[13]

---

[3] Because this case is before the court on a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether Martin has made a prima facie showing of personal jurisdiction over TGT, the court will take the allegations of the SAC as true except to the extent they are controverted by any affidavit submitted by TGT.  *Behagen v. Amateur Basketball Ass'n of USA*, 744 F.2d 731, 733 (10th Cir. 1984).  Further, to the extent the parties submit conflicting affidavits, the court will resolve any factual disputes in Martin's favor.  *Id.*

[4] Dkt. 58 ¶¶ 1, 28.

[5] Dkt. 58 ¶ 1.

[6] Dkt. 58 ¶ 2.

[7] Dkt. 58 ¶ 4.

[8] Dkt. 58 ¶¶ 28–32.

[9] Dkt. 58 ¶ 31.

[10] Dkt. 58 ¶ 35.

[11] Dkt. 59-1 ¶ 6.

[12] Dkt. 59-1 ¶¶ 7–8.

[13] Dkt. 59-1 ¶ 8.

During that visit, the parties agreed on a flat fee arrangement.[14]  On a separate occasion—also in 1999—Tasker visited Martin's Utah studio to select designs to use for TGT's stickers.[15]  During that visit, the parties discussed and agreed on a payment schedule.[16]  These negotiations formed the basis for an unwritten, oral license agreement (the License).[17]  Under the terms of the License, TGT would pay Martin a flat fee to use her artwork on its stickers and Martin was to retain all rights, title, and interests in the artwork she provided to TGT.[18]  The License was non-exclusive and non-transferable.[19]

   For the next twenty or so years, Martin provided artwork to TGT for use on its various lines of souvenir products.[20]  During that time, Tasker traveled to Utah around twice per year.[21]  While visiting Utah, Tasker would stay with Martin, and they would discuss performance under the License.[22]  Specifically, they discussed artwork and designs for TGT.[23]  Early in the parties' business relationship, Tasker often selected artwork in person at Martin's Utah home or studio.[24]  After TGT selected the artwork it would like to use, Martin would send TGT invoices, and TGT would typically pay via check sent by mail to Martin's Utah address.[25]

---

[14] Dkt. 59-1 ¶ 8.

[15] Dkt. 59-1 ¶ 9.

[16] Dkt. 59-1 ¶ 9.

[17] Dkt. 59-1 ¶ 10; dkt. 53 ¶ 38.

[18] Dkt. 53 ¶ 39.

[19] Dkt. 53 ¶ 39.

[20] Dkt. 53 ¶ 8.

[21] Dkt. 59-1 ¶ 18.

[22] Dkt. 59-1 ¶ 19.

[23] Dkt. 59-1 ¶ 19.

[24] Dkt. 59-1 ¶ 17.

[25] Dkt. 59-1 ¶ 20.

<u>Lakeshirts</u>

Sometime between 1999 and 2015, Martin entered into a licensing agreement with a company called Lakeshirts, Inc.[26]  Under the terms of that agreement, Martin licensed artwork to Lakeshirts for use on apparel, for which she received royalty payments from Lakeshirts.[27]  In 2015, Lakeshirts approached Martin about using her artwork on its line of stickers, glassware, and other souvenirs.[28]  Martin declined to provide Lakeshirts with a license for such use.[29] Martin informed TGT and Tasker that she had declined to provide the license to Lakeshirts.[30]

Around September 2018, TGT and Lakeshirts began negotiating a deal under which TGT would sell its assets to Lakeshirts.[31]  In February 2019—after the deal had been completed—both Tasker and Lakeshirts informed Martin of the transaction.[32]  Martin understood from her conversation with Lakeshirts that Lakeshirts believed it had acquired a license to use the artwork TGT used on its souvenirs, including Martin's artwork.[33]  And Martin understood from her conversation with Tasker that Tasker believed TGT had sold to Lakeshirts all the artwork Martin provided to TGT under the License.[34]  Martin requested a copy of the agreement memorializing the deal between TGT and Lakeshirts, but TGT said the agreement contained a confidentiality provision and refused to provide Martin with a copy.[35]  In March 2019, Martin informed TGT

---

[26] Dkt. 53 ¶¶ 63, 65.

[27] Dkt. 53 ¶ 65.

[28] Dkt. 53 ¶ 65.

[29] Dkt. 53 ¶ 67.

[30] Dkt. 53 ¶ 68.

[31] Dkt. 53 ¶ 74.

[32] Dkt. 53 ¶ 76.

[33] Dkt. 53 ¶ 78.

[34] Dkt. 53 ¶ 79.

[35] Dkt. 53 ¶¶ 81–82.

she was terminating any licenses she had with TGT and anyone claiming rights to her artwork under TGT.[36]

Copyright Registrations

Between 2014 and 2018, TGT hired a Utah-based attorney to file applications with the U.S. Copyright Office to register some of Martin's artwork, claiming the artwork was work made-for-hire.[37]  TGT acquired at least sixteen different copyright registrations (the Copyright Registrations).[38]

On June 18, 2019, Martin received a certificate of registration for one of her pieces of artwork (the '006 Copyright).[39]  Since TGT and Lakeshirts completed their deal, Lakeshirts has produced and/or reprinted the work embodied in the '006 Copyright without Martin's permission.[40]

Procedural History

On April 29, 2019, Martin filed a Complaint in this court, alleging a number of causes of action against TGT and Tasker.[41]  On June 3, 2019, TGT and Tasker filed a Motion to Dismiss.[42] On June 24, 2019, Martin filed a First Amended Complaint (FAC) against TGT and Tasker.[43] The FAC was substantially similar to the original Complaint, but included for the first time a cause of action for copyright infringement based on alleged infringement of the '006

---

[36] Dkt. 53 ¶ 84.

[37] Dkt. 53 ¶¶ 70, 72.

[38] Dkt. 53 ¶ 72.

[39] Dkt. 53 ¶ 88.

[40] Dkt. 53 ¶ 89.

[41] Dkt. 2.

[42] Dkt. 11.

[43] Dkt. 23.

5

Copyright.[44]  On July 11, 2019, TGT and Tasker filed a Motion to Dismiss the FAC.[45]  On

November 22, 2019, this court dismissed the FAC without prejudice for lack of personal

jurisdiction and granted Martin leave to file a Second Amended Complaint (SAC).[46]

On December 4, 2019, Martin filed the SAC, in which she removed Tasker as a

defendant in this case and alleges four causes of action: (1) breach of contract; (2) declaratory

relief as to the ownership of the Copyright Registrations; (3) contributory copyright

infringement; and (4) vicarious copyright infringement.[47]  On January 21, 2020, TGT filed a

Motion to Dismiss.[48]  That Motion is now fully briefed and ripe for consideration.

## ANALYSIS

In its Motion, TGT argues this case should be dismissed: (1) pursuant to Rule 12(b)(2)

for lack of personal jurisdiction; (2) pursuant to Rule 12(b)(3) for improper venue; and (3)

pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The court

addresses each of these arguments in turn.

### I. PERSONAL JURISDICTION AND VENUE

#### A. Legal Standard

When the court considers a defendant's motion to dismiss for lack of personal

jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie

showing that personal jurisdiction exists.[49]  In evaluating whether the plaintiff has made such a

showing, the court must accept as true all well-pleaded factual allegations in the plaintiff's

---

[44] Dkt. 23 ¶¶ 74–79.

[45] Dkt. 31.

[46] Dkt. 52.

[47] Dkt. 53.

[48] Dkt. 59.

[49] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

complaint and any factual disputes must be resolved in the plaintiff's favor.[50]  In the absence of

an evidentiary hearing, the court's evaluation is based on the pleadings and any affidavits

submitted in support thereof.[51]  To the extent the parties submit conflicting affidavits, the court

resolves any factual disputes in favor of the plaintiff.[52]

 To establish personal jurisdiction over a defendant, a plaintiff must show "first, that

jurisdiction is authorized under Utah law and, second, that the exercise of jurisdiction does not

offend the due process clause of the Fourteenth Amendment."[53]  Utah's long-arm statute permits

the exercise of jurisdiction "over nonresident defendants to the fullest extent permitted by the

due process clause of the Fourteenth Amendment to the United States Constitution."[54]

Accordingly, the two-step jurisdictional analysis effectively collapses into a one-step

constitutional inquiry.

 "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to

bind a nonresident defendant to a judgment of its courts."[55]  And "[a]lthough a nonresident's

physical presence within the territorial jurisdiction of the court is not required, the nonresident

generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice.'"[56]

---

[50] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[51] *See Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987) ("[I]n the absence of a full evidentiary hearing . . . the determination involves an application of the law to the facts as set forth in the affidavits and complaints . . . .").

[52] *Id.*

[53] *Dudnikov*, 514 F.3d at 1063.

[54] Utah Code § 78B-3-201.

[55] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

[56] *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

<u>i. Minimum Contacts</u>

A court may exercise either general or specific personal jurisdiction over a nonresident defendant.[57]  Here, Martin asserts both general and specific jurisdiction.[58]

General jurisdiction "means that a court may exercise jurisdiction over an out-of-state party for all purposes."[59]  For a court to exercise general jurisdiction over an out-of-state defendant corporation—as TGT is here—the defendant's contacts with the forum state must be "so 'continuous and systematic' as to render them essentially at home in the forum State.'"[60]

Specific jurisdiction "means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contact with the forum state."[61]  Thus, for a court to exercise specific jurisdiction, "the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum*."[62]  The relationship between the defendant and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State."[63]  Further, the minimum contacts analysis is concerned with "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[64]  "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[65]  Once a plaintiff demonstrates a defendant has purposefully directed its activities

---

[57] *See Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779–80 (2017).

[58] Dkt. 59 at 6–9.

[59] *Old Republic Ins. Co. v. Cont'l Motors,* 877 F.3d 895, 903 (10th Cir. 2017).

[60] *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

[61] *Old Republic*, 877 F.3d at 904.

[62] *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780.

[63] *Walden*, 571 U.S. at 284.

[64] *Id.* at 285.

[65] *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919).

at the forum state, the plaintiff must then show that their injuries arise out of the defendant's forum-related activities.[66]

### ii. Fair Play and Substantial Justice

If the court concludes the minimum contacts test has been satisfied, it must then assess whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice."[67]  To do so, courts in this circuit consider the following factors: "(1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies."[68]

These factors are evaluated on a "sliding scale" basis.[69]  That is, the weaker a plaintiff's showing of minimum contacts, "the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction," and vice versa.[70]

### B. TGT Is Not Subject to General Jurisdiction in Utah

Martin first alleges TGT is subject to general jurisdiction in Utah.[71]  The court disagrees. The SAC does not allege facts sufficient to make a prima facie showing that TGT's contacts with Utah are so continuous and systematic as to render TGT at home in this state.

As an initial matter, TGT is neither incorporated in nor has its principal place of business in Utah—the paradigmatic bases for general jurisdiction over a corporation.[72]  Thus, Martin must

---

[66] *Old Republic*, 877 F.3d at 904.

[67] *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020).

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] Dkt. 53 ¶¶ 3–6.

demonstrate this represents an "exceptional case" in which a corporation is rendered at a home in a state other than its place of incorporation or principal place of business.[73]

The SAC contains a number of allegations relating to the amount and scope of business TGT conducts in Utah, but these factual allegations do not establish a basis for general jurisdiction. "[T]he general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts."[74]  Instead, the general jurisdiction inquiry "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide."[75]  And as Martin alleges in her Opposition, only about 8% of TGT's total sales come from business done in Utah.[76]  This is simply insufficient to establish general jurisdiction.[77]  Indeed, "[a] corporation that operates in many places can scarcely be deemed at home in all of them."[78]  To conclude otherwise would render "at home" synonymous with "doing business," a premise the Supreme Court has expressly rejected.[79]

For these reasons, the court concludes Martin has failed to establish that TGT is subject to general jurisdiction in the state of Utah.

---

[72] *See Daimler*, 571 U.S. at 139 n.19.

[73] *Id.*

[74] *Id.* at 139 n.20.

[75] *Id.*

[76] Dkt. 59-2 ¶ 10.

[77] *Cf. Daimler*, 571 U.S. at 123 (declining exercise of personal jurisdiction where California accounted for 2.4% of worldwide sales for Daimler, a German corporation).

[78] *Id.* at 139 n.20.

[79] *Id.*

C. TGT Is Subject to Specific Jurisdiction in Utah

Martin next alleges TGT is subject to specific jurisdiction in Utah.[80]  TGT disagrees,

arguing it is not subject to specific jurisdiction in this district on any of Martin's claims.[81]  The

court begins its analysis with Martin's breach of contract claim, concluding TGT is subject to

specific jurisdiction on that claim.  Having established specific jurisdiction over that claim, the

court then concludes it should exercise pendent personal jurisdiction over Martin's remaining

claims.

i. Breach of Contract Claim

The first step in determining whether the court may exercise specific jurisdiction over a

claim is to determine whether the defendant has sufficient minimum contacts with the forum.  As

explained above, the minimum contacts test consists of two discrete inquiries: (1) whether the

defendant purposefully directed its activities at the forum state and (2) whether the plaintiff's

injuries arise out of the defendant's forum-related activities.

In cases involving contract claims, courts in this circuit analyze the purposeful direction

requirement by looking to the defendant's "continuing relationships with the forum state and its

residents."[82]  That the defendant has a relationship with a forum resident is, standing alone,

insufficient to establish purposeful direction.[83]  Instead, the court "must evaluate the parties'

'prior negotiations and contemplated future consequences, along with the terms of the contract

---

[80] Dkt. 53 ¶¶ 7–13.

[81] Dkt. 58 at 7.  Although the Tenth Circuit has never mandated a claim-by-claim personal jurisdiction analysis, *see Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 96 n.4 (10th Cir. 2012) (unpublished), TGT argues—and Martin does not dispute—that the court should assess personal jurisdiction on a claim-by-claim basis, dkt. 58 at 7. In the absence of clear direction from the Tenth Circuit, the court chooses to follow the parties' lead.

[82] *Dental Dynamics*, 946 F.3d at 1230.

[83] *Old Republic*, 877 F.3d at 905.

and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum.'"[84]

Here, Martin has alleged facts sufficient to establish purposeful direction on TGT's part. For example, while negotiations regarding the License began in Wyoming, they continued and ultimately concluded in Utah.  The parties' course of dealing further demonstrates strong ties to Utah.  Indeed, Tasker would often travel to Utah to select artwork from Martin's collection to use on TGT's products.  And TGT repeatedly paid Martin by remitting payment to her Utah addresses.  This course of dealing demonstrates that TGT purposefully directed its contacts at Utah by pursuing a continuing business relationship with Martin—a relationship that lasted nearly two decades.  Accordingly, Martin has satisfied the purposeful direction requirement of the minimum contacts test.

Martin has also shown that her injuries arise out of TGT's forum-related activities.  There are two potential tests to determine whether a plaintiff's injuries "arise out of" the defendant's forum-related contacts: (1) the but-for test and (2) the proximate cause test.[85]  The but-for test is the less restrictive of the two and is satisfied if "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction."[86]  The proximate cause test is more restrictive and "calls for courts to examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim."[87]  The Tenth Circuit has thus far declined to adopt one test over the other.[88]

---

[84] *Id.* (quoting *Burger King*, 471 U.S. at 479).

[85] *Newsome v. Gallacher*, 722 F.3d 1257, 1269 (10th Cir. 2013).

[86] *Id.* (citation omitted) (internal quotation marks omitted).

[87] *Id.* at 1270 (citation omitted) (internal quotation marks omitted).

[88] *Id.*  The Tenth Circuit has, however, rejected a third test: the "substantial connection" test.  *Dudnikov*, 514 F.3d at 1078.

And the court need not make such an election here either because it concludes Martin has satisfied the more stringent proximate cause test.

To prevail on her breach of contract claim, Martin will have to prove the following elements: "(1) a contract, (2) performance by [Martin], (3) breach of the contract by [TGT], and (4) damages."[89]  At the very least, TGT's contacts with this forum will be relevant to the first element.  Indeed, Martin will have to prove the existence of a contract—here, the License—and TGT's activity negotiating and executing the License in Utah is highly relevant to proving that fact.  Thus, Martin has satisfied the proximate cause test with respect to her breach of contract claim.[90]

Having determined the minimum contacts test has been satisfied, the court turns to "whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice."[91]  Once a plaintiff establishes minimum contacts, the burden shifts to the defendant to prove exercise of jurisdiction would offend traditional notions of fair play and substantial justice.[92]  In determining whether a defendant has met that burden, courts traditionally consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.[93]

---

[89] *Am. W. Bank Members, L.C., v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (citation omitted).  The parties do not provide the court with a choice-of-law analysis concerning which state's substantive law will govern Martin's breach of contract claim.  In the absence of such an analysis, the court assumes Utah law applies here.

[90] *Cf. Nutramax Labs., Inc. v. Hashtag Fulfillment, LLC*, No. 2:17-cv-1174, 2018 WL 2994417, at *5 (D. Utah June 14, 2018) (finding proximate cause test satisfied when defendant's forum-related conducts were relevant to proving one element of trademark infringement claim).

[91] *Old Republic*, 877 F.3d at 908 (citation omitted).

[92] *Dudnikov*, 514 F.3d at 1080.

[93] *Id.*

Here, TGT does not make any arguments regarding fair play and substantial justice, choosing instead to focus solely on the minimum contacts analysis. But even were the court to consider the factors listed above, none of them—either in isolation or in combination—seem to weigh in favor of TGT. The burden on TGT associated with litigating in this forum is low. For example, TGT's counsel is based in Colorado, indicating TGT may have to reach beyond Wyoming's borders to defend a lawsuit regardless of where it is brought. Utah, of course, has an interest in resolving disputes involving its own citizens, and Martin has an interest in receiving convenient relief by litigating in her home state. Further, litigation in this district would not thwart the judicial system's goal of obtaining the efficient resolution of controversies because it would allow for resolution of a case that has already seen extensive motion practice in this district. Finally, there seems to be no issue concerning the states' shared interest in furthering fundamental social policies as this case relates to a fairly routine business dispute. Therefore, subjecting TGT to personal jurisdiction in this forum does not offend traditional notions of fair play and substantial justice.

Thus, the court concludes it may exercise specific personal jurisdiction over TGT on Martin's breach of contract claim.

<u>ii. Remaining Claims</u>

Having established personal jurisdiction over TGT with respect to Martin's breach of contract claim, the question now becomes whether the court may exercise personal jurisdiction over TGT with respect to Martin's remaining claims. The parties dispute whether Martin has satisfied the minimum contacts test with respect to her declaratory relief and copyright infringement claims.[94] The court need not resolve this dispute, however, because the court

---

[94] *See* dkt. 58 at 8–11; dkt. 59 at 7–9.

concludes that—even if Martin has not satisfied the minimum contacts test with respect to her remaining claims—it may exercise pendent personal jurisdiction over Martin's remaining claims.

Pendent personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim."[95]  Put simply, it allows a court to "piggyback" other claims onto a claim over which the court has personal jurisdiction, so long as "all the claims arise from the same facts as the claim over which [the court] has proper personal jurisdiction."[96]  Pendent personal jurisdiction is a court-created concept animated by notions of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties."[97]  The discretion to exercise pendent personal jurisdiction lies with the district court.[98]

Here, the court concludes it should exercise pendent personal jurisdiction over Martin's declaratory relief and copyright infringement claims.  These remaining claims arise out of the same nucleus of operative fact as her breach of contract claim.  The remaining claims all arise out of the same nearly two-decades-long course of dealing that forms the factual universe for the breach of contract claim.  And, perhaps more to the point, Martin's remaining claims will rise and fall based on the existence and terms of the License—factual questions that will be at the center of Martin's breach of contract claim.  Indeed, the existence and terms of the License will determine the viability of Martin's causes of action for declaratory relief and copyright

---

[95] *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002).

[96] *Id.*

[97] *Action Embroidery Corp. v. Atl. Embroidery Corp.*, 368 F.3d 1174, 1181 (9th Cir. 2004) ("When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts.").

[98] *Botefuhr*, 309 F.3d at 1273.

infringement.  Further, the exercise of pendent personal jurisdiction here would promote judicial economy, help avoid piecemeal litigation of claims involving the same facts, and provide the parties with a convenient resolution of all claims.  Thus, the court elects to exercise pendent personal jurisdiction over Martin's remaining claims.

### D. Venue Is Proper in This District

The court rejects TGT's argument that venue in this district is improper.[99]  Venue is proper under 28 U.S.C. § 1391(a)(2) as to Martin's breach of contract claim and declaratory action claim because "a substantial part of the events or omissions giving rise to the claim occurred" in this district.  And venue is proper as to Martin's copyright infringement claims because the court can exercise personal jurisdiction over those claims.[100]

## II. TGT'S RULE 12(B)(6) ARGUMENT

Having established personal jurisdiction and venue, the court now turns to TGT's Rule 12(b)(6) argument that all four of Martin's causes of action should be dismissed for failure to state a claim upon which relief can be granted.  The court addresses TGT's argument with respect to each cause of action in turn.

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."[101]  Under Rule 12(b)(6), a court must dismiss causes of action that "fail[ ] to state a claim upon which relief can be

---

[99] Dkt. 58 at 11–12.  TGT argues venue in this district is improper "[f]or essentially the same reasons" it argues it is not subject to personal jurisdiction in this forum.

[100] *Cf. Dudnikov*, 514 F.3d at 1069 n. 2 ("[T]he only basis for challenging venue in copyright actions is that absence of personal jurisdiction in a forum renders venue improper. Accordingly, the question of venue is essentially swallowed by the jurisdictional analysis.").

[101] Fed. R. Civ. P. 8(a)(2).

granted."[102]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[103]  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[104]  When evaluating a motion to dismiss, the court "accept[s] all well-pleaded facts [in the complaint] as true and view[s] them in the light most favorable to the plaintiff."[105]  However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[106]  The reviewing court is required to "draw on its judicial experience and common sense" to evaluate whether the well-pleaded facts state a plausible claim for relief.[107]  "Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide [defendants] fair notice of what the . . . claim is and the grounds upon which it rests."[108]

### B. Breach of Contract Claim

Martin's breach of contract claim alleges TGT breached the License by: (1) registering Martin's artwork with the Copyright Office; (2) selling Martin's artwork to third parties; and (3) selling, assigning, or otherwise conveying the License to a third party.[109]  TGT argues this claim should be dismissed because it is preempted by the Copyright Act.[110]  TGT's argument, however, is procedurally premature.

---

[102] Fed. R. Civ. P. 12(b)(6).

[103] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[104] *Id.*

[105] *Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citation omitted).

[106] *Iqbal*, 556 U.S. at 678.

[107] *Id.* at 679.

[108] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

[109] Dkt. 53 ¶ 95.

[110] Dkt. 58 at 16–17.

The Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by [17 U.S.C. §] 106 . . . and come within the subject matter of copyright as specified by [17 U.S.C. §§] 102 and 103."[111] Therefore, a state common law claim is preempted when "(1) the work [at issue] is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."[112]

TGT argues Martin's breach of contract claim is "nothing more than recast claims of copyright infringement by exceeding the scope of the license and violating the rights afforded to her under the Copyright Act" and is therefore preempted.[113]  In response, Martin argues her breach of contract claim is not preempted because it does not implicate any of the exclusive rights under the Copyright Act.[114]

The court need not decide, however, whether Martin's breach of contract claim implicates exclusive rights under the Copyright Act because the parties agree that at least one basis for the breach of contract claim does not involve any exclusive rights.  As TGT acknowledges, Martin's breach of contract claim is not preempted to the extent it claims TGT breached the License by violating the License's prohibition against assignment.[115]  Thus, the parties agree that at least part of Martin's breach of contract claim survives TGT's preemption argument.  And as this court has explained, "piecemeal dismissal of parts of claims is

---

[111] 17 U.S.C. § 301.

[112] *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1542–43 (10th Cir. 1996) (citation omitted) (internal quotation marks omitted).

[113] Dkt. 58 at 17.

[114] Dkt. 59 at 21.

[115] Dkt. 61 at 7.

inappropriate at the [Rule 12(b)(6)] stage."[116]  Therefore, because part of Martin's breach of contract claim survives, the claim survives in its entirety.

## C. Declaratory Relief Claim

Martin's declaratory relief claim seeks an order from the court declaring that Martin is the owner of the copyrights embodied in the Copyright Registrations.[117]  TGT argues this claim should be dismissed because it is moot.[118]  The court concludes Martin's declaratory relief claim should not be dismissed as moot at this stage.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"[119]  Here, TGT argues the issue of copyright ownership is no longer live as between Martin and TGT because TGT sold all of its assets—including any alleged ownership interests in Martin's artwork—to Lakeshirts.[120]  Thus, TGT argues, if any live dispute exists over copyright ownership, it is now between Martin and Lakeshirts.[121]  But TGT's argument mischaracterizes the facts—at least as pleaded in the SAC.[122]

---

[116] *M.S. v. Premera Blue Cross*, No. 2:19-cv-00199, 2020 WL 1692820, at *6 (D. Utah Apr. 7, 2020); *see also FTC v. Nudge, LLC*, No. 2:19-cv-00867, 2019 WL 7398678, at *12–13 (D. Utah Dec. 31, 2019).  Instead, a challenge to only a part of a plaintiff's claim becomes appropriate at summary judgment.  *Nudge*, 2019 WL 7398678, at * 13.

[117] Dkt. 53 ¶¶ 98–104.

[118] Dkt. 58 at 16.

[119] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted) (internal quotation marks omitted).

[120] Dkt. 58 at 16.

[121] Dkt. 58 at 16.

[122] In its Reply, TGT cites to an affidavit submitted by Tasker in connection with TGT's motion to dismiss.  *See* dkt. 61 at 4.  While the court may consider Tasker's affidavit with respect to TGT's Rule 12(b)(2) arguments, *see Behagen v. Amateur Basketball Ass'n of America*, 744 F.2d 731, 733 (10th Cir. 1984), it cannot do so with respect to TGT's Rule 12(b)(6) arguments without converting TGT's Motion to a motion for summary judgment, *Lowe v. Town of Fairland, Oklahoma*, 143 F.3d 1378, 1381 (10th Cir. 1998).  As the Tenth Circuit has explained, "courts have broad discretion in determining whether or not to accept materials beyond the pleadings."  *Lowe*, 143 F.3d at 1381.  Here, the court declines to consider materials beyond the pleadings in resolving TGT's Rule 12(b)(6) arguments and therefore need not convert TGT's Motion to a motion for summary judgment.

Specifically, the Martin does not allege in the SAC that TGT has completely disclaimed any and all ownership interests in Martin's artwork to Lakeshirts.  Instead, the she alleges that TGT filed applications with the United States Copyright Office to register the Copyright Registrations.[123]  And as of November 26, 2019, TGT was listed in the federal copyright database as the holder of the copyrights to the Copyright Registrations.[124]  Further, Martin understood from her conversation with Lakeshirts that Lakeshirts believed it had acquired only a license to use the artwork TGT used on its products, including Martin's artwork.[125]  In other words, Martin understood from her conversation with Lakeshirts that Lakeshirts had not acquired any ownership interest in Martin's artwork from TGT.  Thus, Martin alleges in the SAC that TGT claimed ownership in the Copyright Registrations at one point in time and—although TGT later entered into the transaction with Lakeshirts—may still retain that ownership.  That is, there may still be a live dispute between Martin and TGT as to the ownership of the copyrights embodied in the Copyright Registrations.  Therefore, Martin's declaratory relief claim is not moot.

### D. Copyright Infringement Claims

Martin asserts two causes of action for copyright infringement against TGT rooted in Lakeshirts's reproduction of the work embodied in the '006 Copyright: (1) contributory copyright infringement and (2) vicarious copyright infringement.  TGT argues both copyright infringement claims are barred because Martin failed to obtain a copyright registration before

---

[123] Dkt. 53 ¶ 70.

[124] Dkt. 53 ¶ 73.

[125] Dkt. 53 ¶¶ 78–79.

filing this suit.[126]  In the alternative, TGT argues both claims fail because Martin has failed to plead sufficient facts to support either claim.[127]

i. Copyright Registration Timing

TGT first argues Martin's copyright infringement claims are barred because Martin failed to comply with the Copyright Act's registration requirements before filing this suit.[128]

17 U.S.C. § 411(a) provides in relevant part, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."[129]  TGT argues that, because Martin filed her original Complaint before obtaining the '006 Copyright, Section 411(a) bars Martin's copyright infringement claims.[130]  In response, Martin argues Section 411(a) does not foreclose a plaintiff from filing an initial complaint without a copyright claim and then later amending the complaint to include a copyright claim once a copyright registration has been obtained—as she did here.[131]  The court agrees with Martin.

TGT urges the court to read Section 411(a) to bar Martin's copyright claims because she "instituted" this "civil action" by filing the original Complaint prior to obtaining the '006 Copyright registration.  But TGT's reading of Section 411(a) is overly broad.  Specifically,

---

[126] Dkt. 58 at 12.

[127] Dkt. 58 at 13–14.

[128] Dkt. 58 at 12–13.

[129] 17 U.S.C. § 411(a).

[130] It is worth noting the Supreme Court recently resolved a circuit split related to Section 411(a)'s registration requirement.  In *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, the Supreme Court clarified that registration of a copyright claim is "made" for purposes of Section 411(a) when the Copyright Office registers a copyright.  139 S. Ct. 881, 888 (2019).  This means the relevant date for determining whether a litigant has satisfied Section 411(a)'s registration requirement is the date on which the Copyright Office registers the copyright—as opposed to the date the litigant applied for registration, as some circuit courts had held prior to *Fourth Estate*.  *Id.*  Here, Martin obtained the '006 Copyright on June 18, 2019.  Thus, June 18, 2019 is the operative date for determining whether Martin has satisfied Section 411(a)'s registration requirement.

[131] Dkt. 59 at 13.

Section 411(a) prohibits litigants only from instituting a "civil action *for infringement of the copyright in any United States work*" prior to obtaining registration of the copyright.[132]  Here, this action did not become an action for copyright infringement until Martin alleged causes of action for copyright infringement for the first time in the FAC, which she filed on June 24, 2019. Because Martin obtained the '006 Copyright on June 18, 2019, before filing the FAC, she did not run afoul of the Copyright Act's registration requirements.  Therefore, the court concludes Martin satisfied Section 411(a)'s registration requirement by waiting to obtain the '006 Copyright before alleging any cause of action for copyright infringement.

Seeking to avoid this conclusion, TGT cites to a number of cases from other jurisdictions in which courts have dismissed copyright claims where the plaintiff failed to obtain a copyright registration before filing their initial complaint.[133]  But the cases TGT relies on are factually distinguishable from the case at hand in one critical respect: the plaintiffs in the cases cited by TGT included causes of action for copyright infringement in their initial complaints.[134]  In other words, those plaintiffs instituted civil actions for copyright infringement by filing their initial complaints.  And because they had not obtained registrations prior to instituting those actions, Section 411(a) barred their respective copyright claims.

---

[132] 17 U.S.C. § 411(a) (emphasis added).

[133] *See* dkt. 58 at 13, n.3.

[134] *See Malibu Media, LLC v. Doe*, No. 18-cv-10956, 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019) (noting plaintiff's initial complaint contained copyright claims); *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 201 (S.D.N.Y. 2019) (same); *Mai Larsen Designs v. Want2Scrap, LLC*, No. SA-17-CV-1084, 2019 WL 2343019, at *1 (W.D. Tex. June 3, 2019) (same); *UAB "Planner 5D" v. Facebook, Inc.*, No. 19-CV-03132, 2019 WL 6219223, at *4 (N.D. Cal. Nov. 21, 2019) (same).

TGT does cite to one case, *Sullivan v. Duncan*, No. 13-cv-1640, 2015 WL 4393316, at *7 (S.D.N.Y. July 17, 2015), in which a court dismissed a plaintiff's copyright claims that were brought for the first time in an amended complaint.  But the court finds *Sullivan* unpersuasive.  *Sullivan*'s lone citation to authority for the proposition that the copyright claims in that case should be dismissed was the Second Circuit's decision in *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014).  *Psihoyos*, however, involved a plaintiff who included copyright claims in their initial complaint.  748 F.3d at 122.  Thus, the authority on which *Sullivan* relied is factually similar to the other cases cited by TGT and, by extension, factually distinct from the case at hand.

Here, Martin's original Complaint included no copyright claims.  Thus, Martin's original Complaint did not institute an action for copyright infringement.  Rather, it instituted an action for breach of contract and a handful of common law torts.[135]  It was not until Martin filed the FAC that this became an action for copyright infringement.  In this sense, Martin did not "institute" an action for copyright infringement until she filed the FAC.  Indeed, the filing of the FAC marks the point at which this case evolved into a copyright infringement action.  And by that point, Martin had obtained a registration for the '006 Copyright.  Therefore, Section 411(a) does not bar Martin's copyright claims.[136]

### ii. Contributory Copyright Infringement

Martin's first copyright claim is one for contributory copyright infringement.  "Contributory copyright infringement is a derivative of direct copyright infringement."[137]  As the Supreme Court has explained, "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement."[138]  Stated slightly differently, the Tenth Circuit has held that defendants are liable for contributory copyright infringement "when the defendant causes or materially contributes to another's infringing activities and knows of the infringement."[139]

---

[135] *See* dkt. 2.

[136] The purpose of Section 411(a) is to require a copyright owner to register their copyright before "pursuing an infringement claim in court."  See *Fourth Estate*, 139 S. Ct. at 887 ("Before pursuing an infringement claim in court, however, a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'").  In this way, "registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."  *Id.*  Thus, allowing Martin—once she obtained the relevant registration—to bring a copyright claim for the first time in an amended complaint is not inconsistent with Section 411(a).  Requiring Martin to file an entirely new action to bring her copyright claims, on the other hand, is not mandated by the text of Section 411(a), would serve no purpose of Section 411(a), and would impose unnecessary costs and burdens on both the court and the parties.

[137] *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1146 (10th Cir. 2016).

[138] *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

[139] *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013).

Because it is a derivate of direct infringement, there can be "no contributory infringement without a direct infringement."[140]

Here, Martin alleges TGT is liable for contributory infringement because: (1) Lakeshirts has directly infringed by reproducing the work embodied in the '006 Copyright; (2) TGT knew Lakeshirts intended to reproduce the work embodied in the '006 Copyright; and (3) TGT entered into the transaction with Lakeshirts in which it purported to convey either ownership of Martin's artwork or its rights under the License to use Martin's artwork.[141]  In response, TGT argues Martin's contributory infringement claim fails because the SAC does not allege TGT intended to induce or encourage Lakeshirts's infringement at the time of the transaction.[142]

The court concludes Martin has plausibly alleged facts sufficient to support her claim for contributory infringement.  The court finds the Tenth Circuit's opinion in *Diversey* helpful here. In *Diversey*, a graduate student sued university administrators for infringing his copyright to an unpublished dissertation by publishing his dissertation without his consent.[143]  Packaged with the direct infringement claim was a contributory infringement claim against the university's dean of graduate studies, who allegedly confiscated the unpublished dissertation and deposited the draft

---

[140] *Savant Homes*, 809 F.3d at 1146 (internal quotation marks omitted).

[141] Dkt. 53 ¶¶ 114–16.

[142] Dkt. 58 at 14–15.  TGT also argues it could not have known or intended that Lakeshirts would infringe the '006 Copyright because Martin did not purport to terminate the License until after TGT and Lakeshirts had entered into the transaction. Dkt. 61 at 10.  Thus, TGT argues, Lakeshirts was licensed at the time of the transaction and was not yet infringing on the '006 Copyright. Dkt. 61 at 10.  But, as the court explained above, it is unclear whether TGT actually transferred the License to Lakeshirts or whether TGT transferred purported ownership of artwork to Lakeshirts that TGT acquired from Martin pursuant to the License (or some combination of the two).  Thus, it is unclear whether Lakeshirts was ever licensed, as TGT argues.  Because this issue is before the court on a motion to dismiss, the court "resolve[s] all reasonable inferences in the plaintiff's favor and ask[s] whether it is plausible that the plaintiff is entitled to relief."  *Diversey*, 738 F.3d at 1199 (citation omitted) (internal quotation marks omitted). Here, it is plausible Martin is entitled to relief on this claim because the court can reasonably infer that Lakeshirts was not licensed at the time of the transaction.  As such, the court declines to dismiss Martin's claim on this ground.

[143] *Diversey*, 738 F.3d at 1198.

with the university's library for inclusion in its collections.[144]  The university library then published copies of the dissertation in two of its collections.[145]  On review of a motion to dismiss, the Tenth Circuit concluded the plaintiff had stated a plausible claim for contributory infringement against the dean of graduate studies.[146]  In support, the Tenth Circuit pointed to the dean's provision of the dissertation to the university library for inclusion in its collections, which resulted in the library's unauthorized distribution of the dissertation.[147]

Here, TGT's actions closely mirror those of the dean of graduate studies in *Diversey*. That is, TGT provided the work embodied in Martin's '006 Copyright to Lakeshirts with knowledge that Lakeshirts would reproduce that work.[148]  In doing so, TGT provided the work to Lakeshirts with knowledge that Lakeshirts would later infringe on the '006 Registration.  As the Tenth Circuit held in *Diversey*, this is sufficient to establish a plausible claim for contributory infringement at this stage.[149]

---

[144] *Id.* at 1198–99.

[145] *Id.* at 1199.

[146] *Id.* at 1205.

[147] *Id.* at 1204–05.

[148] Dkt. 53 ¶ 116.

[149] *See also* 3 Nimmer on Copyright § 12.04 ("One who furnishes a copyrighted work to another, who in turn wrongfully copies from that work, may be liable as a contributory infringer . . . .").

<u>iii. Vicarious Copyright Infringement</u>

Martin's second copyright claim is one for vicarious infringement.  A defendant may be held liable for vicarious infringement when the defendant "profit[s] from direct infringement while declining to exercise a right to stop or limit it."[150]

Here, the alleged infringing activity is Lakeshirts's reproduction of the work embodied in the '006 Copyright.[151]  Martin argues TGT is liable for vicarious infringement because TGT profited from the transaction with Lakeshirts and TGT could have prevented Lakeshirts from infringing on the '006 Copyright by not transferring the License and/or purported ownership of Martin's artwork to Lakeshirts.[152]  In response, TGT argues Martin has not plausibly alleged that TGT has the right and ability to supervise Lakeshirts's activity.[153]  The court agrees with TGT.

Martin includes in the SAC no allegations suggesting that TGT has any right to stop or limit Lakeshirts's alleged infringing activity.  For example, Martin does not allege that TGT owns or otherwise exercises control over Lakeshirts.  At most, Martin alleges TGT could have prevented the infringement in the first instance by not conveying Martin's artwork to Lakeshirts.  But that is irrelevant to the question of vicarious infringement.  Vicarious infringement requires that the vicarious infringer have the ability to supervise and control the infringing activity.[154]  Here, Martin fails to allege TGT has the ability to supervise and control Lakeshirts's activity.  Therefore, Martin's vicarious infringement claim must be dismissed.

---

[150] *Grokster*, 545 U.S. at 930; *see also Diversey*, 738 F.3d at 1204 ("Vicarious liability attaches when the defendant 'has the right and ability to supervise the infringing activity' and 'has a direct financial interest in such activities.'" (citation omitted)).

[151] Dkt. 53 ¶ 131.

[152] Dkt. 53 ¶ 132.

[153] Dkt. 58 at 14.

[154] *Diversey*, 738 F.3d at 1204.

**CONCLUSION**

For the reasons explained above, TGT's Motion[155] is GRANTED IN PART and DENIED

IN PART.  Martin's vicarious copyright infringement claim is DISMISSED without prejudice.

**SO ORDERED** this 21st day of April 2020.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[155] Dkt. 58.