IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTINE MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>SGT, INC. f/k/a TGT, INC., a Wyoming corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER OVERRULING PLAINTIFF'S OBJECTION TO ORDER GRANTING SANCTIONS**<br><br>Case No. 2:19-cv-00289-RJS-DBP<br><br>Chief Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

After protracted discovery disputes between the parties, Defendant SGT, Inc. filed a Motion for Sanctions asserting Plaintiff Christine Martin had failed to comply with her discovery obligations under a prior court order, resulting in prejudice to SGT. [1]  Chief Magistrate Judge Dustin Pead issued an Order Granting SGT's Motion.[2]  Now before the court is Martin's objection to that Order, asking this court to set aside Judge Pead's ruling.[3]  For the reasons explained below, Martin's Objection is OVERRULED.

## BACKGROUND

Martin commenced this action against SGT in April 2019, bringing claims for breach of contract, declaratory relief, and contributory copyright infringement.[4]  The dispute centers on an

---

[1] Dkt. 73 (Motion for Sanctions).

[2] Dkt. 77 (Order Granting SGT's Motion for Sanctions).

[3] Dkt. 80 (Objection to Order Granting Defendant SGT's Motion for Sanctions).

[4] *See* Dkt. 2 (Original Complaint); Dkt. 53 (Second Amended Complaint).  Martin also asserted a claim for vicarious copyright infringement in her Second Amended Complaint, but that claim was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. 63 (Memorandum Decision and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss).

oral license agreement between the parties allowing SGT to use Martin's artwork on products it sold, and the subsequent sale of the right to use Martin's artwork to another entity.[5]

SGT served Martin with Requests for Production on July 13, 2020, asking her to produce electronically-stored information with certain specifications in accordance with the Federal Rules of Civil Procedure and the then-governing Scheduling Order.[6]  On August 14, Martin filed a Motion for Extension of Time to Respond to Discovery Requests, presenting vaguely worded justifications of "attending to her elderly parents" and "issues relating to working remotely during the current pandemic."[7]  On August 21, before Judge Pead had the opportunity to rule on the Motion for Extension, Martin served her written responses[8] and produced a single 916-page PDF file "consisting of disparate, disorganized documents" which, according to SGT, failed to respond to the majority of its requests.[9]

On August 31, 2020, Judge Pead issued an order (the August 2020 Order)[10] ruling on Martin's Motion for Extension and considering SGT's arguments against issuing an extension. Among other things, SGT asserted there were several procedural deficiencies in Martin's motion, Martin had failed to adequately meet and confer, and her responses to SGT's interrogatories and production requests were past due.[11]  Judge Pead ultimately denied the extension, finding Martin's "passing reference[s] to 'working remotely' and a need to attend 'to her elderly

---

[5] *See generally* Dkt. 53 ¶¶ 28–91; Dkt. 64 (SGT's Answer and Counterclaims to Second Amended Complaint) ¶¶ 28–91.

[6] Dkt. 69-7 (Defendant's First Set of Requests for Production) at 2–3 (citing Fed. R. Civ. P. 34(b)(1)(C)); Dkt. 66 (Scheduling Order) at 2 (requiring the discovery of electronically stored information to be produced "in the format it is maintained in the normal course").

[7] Dkt. 68 (Plaintiff's Motion for Extension of Time to Respond to Discovery Requests) at 4.

[8] *See* Dkt. 73-2 (Plaintiff's Responses).

[9] Dkt. 73-1 (Benjamin Simler Decl.) ¶ 3.

[10] Dkt. 71 (Ruling & Order on Motion for Extension).

[11] Dkt. 69 (SGT's Response to Plaintiff's Motion for Extension of Time to Respond to Discovery Requests).

parents'" did not constitute excusable neglect because she failed to "tether either of these issues to her failure to meet the applicable discovery deadlines."[12]  He ordered Martin to respond to SGT's first set of Interrogatories and Requests for Production with "complete, non-evasive responses and a complete production no later than September 4, 2020," and also ruled that Martin had "waived all objections thereto other than with respect to Fifth Amendment privileges."[13]  Judge Pead declined to award SGT attorney fees for Martin's alleged failure to meet and confer on the discovery issues, but added the caveat that "[f]uture failures to do so . . . [would] not be viewed favorably."[14]

The next day, September 1, 2020, SGT's counsel emailed Martin's counsel, identifying specific deficiencies in her responses to various interrogatories, and noting how the PDF file she produced had "apparently concentrated hundreds of separate paper files into a single document, with no apparent organization" and without explanation of which documents were responsive to which requests.[15]  Counsel for Martin answered that the August 21 responses "compl[ied] with the applicable rules of civil procedure," and the issues identified in counsel's September 1 email were "unrelated" to Judge Pead's August 31 Order.[16]  The parties met and conferred via telephone conference on October 1, during which counsel for Martin stated that all the responsive documents Martin had found up to that point had been produced.[17]

---

[12] Dkt. 71 at 4.

[13] *Id.* at 4–5.

[14] *Id.* at 5.

[15] Dkt. 73-4 (September Email Communications) at 2–3.

[16] *Id.* at 2.

[17] Dkt. 74-1 (Timothy Smith Decl.) ¶ 7; Dkt. 73-1 ¶ 5.

On October 9, Martin served Supplemental Responses[18] and on October 12, she produced approximately 2,700 new documents, again in a "scattershot fashion."[19] According to SGT, Martin's new production still omitted, without explanation, certain documents SGT specifically requested.[20] Counsel for SGT sent another email on November 9 expressing dissatisfaction with the supplemental production and identifying the categories of documents absent from the produced files, including documents relating to the copyright registration and to communications between Martin and the previous owner of SGT.[21] The parties conferred again by telephone conference on November 17, during which Martin's counsel assured that Martin would continue to look for documents responsive to SGT's requests.[22] On November 18, Martin produced eighteen additional files, including emails between her counsel and the U.S. Copyright Office.[23]

SGT filed a Motion for Sanctions on December 8, 2020, asking the court to dismiss Martin's case entirely and enter default against her or, in the alternative, order a series of sanctions that would partially cure the prejudice to SGT from Martin's failure to adequately produce documents.[24] Martin opposed the Motion on its merits and argued SGT had not complied with the meet-and-confer requirement and had exceeded the 500-word limit for short form discovery motions, in violation of Federal Rule of Civil Procedure 37 and Local Rule DUCivR 37-1.[25] SGT countered that the parties had conferred at length on multiple occasions

---

[18] Dkt. 73-1 ¶ 5; Dkt. 73-6 (Supplemental Responses).

[19] Dkt. 73-1 ¶¶ 7–8.

[20] *Id.* ¶ 9.

[21] Dkt. 73-7 (November Email Communications) at 1–2.

[22] Dkt. 74-1 ¶¶ 17–24; Dkt. 73-1 ¶ 10.

[23] Dkt. 73-1 ¶ 11.

[24] Dkt. 73 at 9–10.

[25] Dkt. 74 (Plaintiff's Opposition to Defendant's Motion for Sanctions); *see* Fed. R. Civ. P. 37; DUCivR 37-1.

before the Motion for Sanctions was filed.[26]  SGT also argued its Motion for Sanctions did not

fall under Local Rule 37-1 because SGT sought sanctions relating to a prior discovery motion

and was not advancing a new motion to compel discovery.[27]

On January 29, 2021, Judge Pead issued an Order Granting SGT's Motion for

Sanctions.[28]  At the outset, he found Martin's procedural arguments unpersuasive, characterizing

them as "half-hearted attempts to obfuscate from the substance of the underlying Motion."[29]

Specifically, Judge Pead noted Rule 37(a) only imposes a meet-and-confer requirement before

filing a motion to compel discovery, whereas SGT had filed a motion for sanctions based on

Martin's failure to abide by the court's prior discovery order.[30]  Even setting this aside, Judge

Pead noted that SGT did meet and confer with Martin on at least three occasions and "at some

point, [] Martin's burden to respond to outstanding discovery overshadows the requirements that

Defendant continue to engage Plaintiff in a meet and confer."[31]  Regarding the 500-word limit,

Judge Pead found even if there was any error, it was harmless because the court would have

"immediately" requested additional briefing if SGT had filed a motion in short form seeking

such severe sanctions.[32]

---

[26] Dkt. 75 (SGT's Reply in Support of Motion for Sanctions) at 2.

[27] *Id.* at 3–5 (citing *Celtig, LLC v. Patey*, No. 2:17-CV-01086-JNP-EJF, 2019 WL 4563887, at *6 (D. Utah Aug. 19, 2019), *report and recommendation adopted*, 2019 WL 4563648 (D. Utah Sept. 19, 2019) (discussing history of short form motions to compel, but no short form motion seeking sanctions thereafter); *City of Orem v. Evanston Ins. Co.*, No. 2:16-CV-425-JNP, 2018 WL 565715, at *1–2 (D. Utah Jan. 24, 2018) (granting full form motion requesting sanctions for failure to obey discovery order, which in turn had been issued in response to plaintiffs' short form motion to compel)); *see also* DUCivR 37-1(b).

[28] Dkt. 77.

[29] *Id.* at 5.

[30] *Id.*

[31] *Id.*

[32] *Id.* at 5–6.

5

After dispensing with Martin's procedural arguments, Judge Pead analyzed the two main grounds for SGT's Motion.  First, he found Martin had failed to comply with the August 2020 Order because she had been required to make "a complete production no later than September 4, 2020," yet "discovery remain[ed] outstanding" almost five months after that deadline.[33]  Second, the documents Martin produced were not in an "acceptable format" because SGT had been unable to ascertain, "with reasonable effort," which documents were responsive to its requests.[34]  Specifically, Judge Pead found Martin's productions did not comply with Federal Rule of Civil Procedure 34 because the "emails and thousands of other files . . . [had been] dumped together into a single folder, rather than with the original directory names or structure, and hundreds of files were blank or included random system files and documents unrelated to this action."[35]  It was apparent the documents were neither produced as they had been kept in the usual course of business, nor had they been organized or labeled in a manner that would correspond to categories in SGT's discovery requests, thus violating Rule 34.[36]

Next, Judge Pead analyzed whether it would be appropriate to grant SGT's principal sanction request of dismissing the action with prejudice, applying the factors articulated in *Ehrenhaus v. Reynolds*.[37]  Applying those factors, Judge Pead concluded that dismissing the case or granting default judgment against Martin would not be appropriate because "lesser sanctions may be effective, will serve the interests of justice[,] and give substance to the court's preference

---

[33] *Id.* at 6; *see* Dkt. 71 at 4.

[34] Dkt. 77 at 6–7.

[35] *Id.* at 7 (internal quotation marks omitted).

[36] *Id.*; *see* Fed. R. Civ. P. 34(b)(2)(E)(i) (requiring parties to either produce "documents or electronically stored information" "as they are kept in the usual course of business or . . . organize and label them to correspond to the categories in the request").

[37] Dkt. 77 at 7–10 (citing *Ehrenhaus*, 965 F.2d 916, 920–21 (10th Cir. 1992)).

for resolution on the merits."[38]  Accordingly, Judge Pead ordered Martin to: (1) pay for an independent forensic electronically stored information vendor to "collect, process, and catalog" all electronically stored information in her possession, (2) produce by February 16, 2021 "all documents that were in existence by October 9, 2020" that Martin had "withheld on the basis of a privilege or work product objection," and (3) reimburse SGT for all "reasonable expenses" it incurred in relation to the improper format of her productions and the expenses associated with SGT's Sanctions Motion.[39]

Martin filed a timely Objection, asking this court to set aside the Order Granting Sanctions.[40]  Martin asserts: (1) Judge Pead's rejection of her procedural arguments was contrary to law and clearly erroneous, (2) he was incorrect in finding she had violated the August 2020 Order, and (3) he erred in concluding that her productions were made in an unacceptable format.[41]  SGT responded to Martin's Objection, addressing each of these arguments.[42]  The matter is now fully briefed, and for the reasons described herein, Martin's Objection is OVERRULED.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), a magistrate judge's ruling on a non-dispositive matter should be set aside only if it is "clearly erroneous or contrary to law."  Under this standard, a magistrate judge's factual findings are reversed only if, after reviewing the

---

[38] *Id.* at 10.

[39] *Id.* at 11.  Judge Pead also ordered the parties to "meet and confer and submit a proposed, stipulated amended scheduling order" no later than February 8, 2021, and ordered SGT to "file a certification of 'complete production'" once it received the electronically stored information produced by the independent vendor and any other remaining outstanding productions.  *Id.*

[40] Dkt. 80.

[41] *Id.* at 6–10.

[42] Dkt. 86 (SGT's Response to Plaintiff's Objection to Order Granting SGT's Motion for Sanctions).

evidence, the court "is left with the definite and firm conviction that a mistake has been committed."[43]  "Under the contrary to law standard, the court conducts a plenary review of the magistrate's purely legal determinations, and sets aside an order if the wrong legal standard was applied or if the appropriate legal standard was applied incorrectly."[44]

## ANALYSIS

Martin does not object to any of the particular sanctions Judge Pead imposed.  Rather, she makes two broad arguments objecting to the decision to impose sanctions at all.  First, she argues Judge Pead erred in dismissing her procedural challenges—concluding Rule 37(a) does not apply to sanctions motions, finding the parties had in fact met and conferred, and finding SGT's failure to file its Motion in short-form inconsequential.[45]  Second, Martin argues Judge Pead erroneously concluded she had failed to comply with the August 2020 Order, asserting he disregarded her good-faith assurances that she had provided complete production of documents.[46]  Finally, she makes a brief argument that Judge Pead erred in concluding that her pre-September 4 productions were made in an impermissible format.[47]

These arguments incorporate both legal and factual aspects of Judge Pead's determinations on the challenged issues, and therefore implicate both standards of review. Accordingly, within each issue, the court first addresses Martin's arguments that Judge Pead misapplied the law, and then her arguments that Judge Pead made incorrect factual findings.  For

---

[43] *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988); *accord Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006).

[44] *Mitchell International, Inc. v. Healthlift Pharm. Servs., LLC*, 2:19-cv-00637, 2020 WL 5645321, at *2 (D. Utah Sept. 22, 2020) (internal quotation marks, brackets, and citation omitted).

[45] Dkt. 80 at 8–10.

[46] *Id.* at 6–8.

[47] *Id.* at 8 n.9.

the reasons explained below, the court concludes Judge Pead applied the correct legal standard as to each challenged issue and none of his findings were clearly erroneous.

## I.   Judge Pead did not Err in Rejecting Martin's Procedural Arguments

Martin objects to Judge Pead's dismissal of her procedural arguments against SGT's Motion for Sanctions, and his characterization of them as "half-hearted attempts to obfuscate from the substance of the underlying Motion."[48]  She contends Judge Pead erroneously interpreted and applied Rule 37, incorrectly found the parties had nonetheless met and conferred, and erred by declining to dismiss SGT's motion outright for not being in short form.[49]  Martin failed to carry her burden on each of these arguments.

### A. *Judge Pead Correctly Applied and Interpreted Federal Rule 37*

In opposing SGT's Motion for Sanctions, Martin asserted the Motion violated the Rules of Civil Procedure because it had not included a certification that the parties met and conferred to resolve the discovery dispute before seeking court intervention.[50]  Judge Pead found this argument unavailing, concluding the meet-and-confer requirement found in Federal Ruel of Civil Procedure 37(a) applies to motions to compel discovery, not to SGT's motion seeking sanctions based on Martin's alleged violations of Judge Pead's prior discovery order.[51]  In her Objection, Martin asserts Judge Pead misinterpreted Rule 37(a) making his determination contrary to law.[52]

This court sees no error in Judge Pead's interpretation of Rule 37(a).  By its plain terms and structure, the meet-and-confer requirement applies only to motions seeking "an order

---

[48] *Id.* at 8–10.

[49] *Id.*

[50] *See* Dkt. 74 at 3–6.

[51] Dkt. 77 at 5.

[52] Dkt. 80 at 8–9.

compelling disclosure or discovery."[53]  The meet-and-confer requirement is found in the second sentence of Rule 37(a)(1), stating, "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[54]  Reference to "[t]he motion" in this subsection clearly refers to the type of motion addressed by section (a)—motions for an order compelling disclosure or discovery.[55]  No such meet-and-confer requirement appears in Rules 37(b) or 37(c), pursuant to which SGT moved for sanctions.[56]  The court finds Judge Pead's ruling on this point was not contrary to law.

### B.  It was Not Clearly Erroneous to Find that the Parties had Met and Conferred

Moreover, Judge Pead found that SGT did in fact meet and confer with Martin on multiple occasions in an attempt to resolve the outstanding productions.[57]  Martin attacks this finding as clearly erroneous, asserting there were "conflicting narratives" in the declarations of both parties' attorneys, necessitating an evidentiary hearing on the issue.[58]

As noted, this court will only overturn a magistrate judge's factual finding if it has a "definite and firm conviction" that the magistrate judge made a mistake.[59]  On the finding that the parties met and conferred on three distinct occasions, there is no indication Judge Pead made a mistake.  While Martin may be correct that there are some differences in the declarations of the parties' attorneys as to what exactly transpired during each meeting, the common thread is that

---

[53] Fed. R. Civ. P. 37(a).

[54] *Id.* R. 37(a)(1).

[55] *Id.*

[56] *See Id.* R. 37(b), (c); *see also* Dkt 73 at 1.

[57] Dkt. 77 at 5.

[58] Dkt. 80 at 9–10.

[59] *See Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).

the parties conferred at least three times, and each time the deficiencies in Martin's productions were discussed at length.  It is immaterial that the attorneys gave slightly differing accounts of exactly what was said at each of these meetings.  Judge Pead found "SGT did meet and confer with [Martin] on September 1, 2020, October 1, 2020 and November 17, 2020"[60]—and the record supports this.  SGT submitted evidence of the September 2020 emails between the parties' attorneys trying to resolve the dispute surrounding Martin's production of the requested documents.[61]  And the sworn declarations of both attorneys describe extensive discussions that took place via teleconference on October 1 and November 17, 2020.[62]

Accordingly, even if SGT was required to meet and confer before moving for sanctions, Judge Pead's finding that the parties did in fact confer on three occasions trying to resolve the discovery disputes was not clearly erroneous.

### C.  Judge Pead's Application of Local Rule 37-1 was Not Contrary to Law

Despite Martin's argument that SGT's Sanctions Motion did not comply with Local Rule 37-1's 500-word limit for short form discovery motions, Judge Pead also declined to find SGT in violation of that Rule.  Specifically, Judge Pead concluded that "given the gravity of [SGT's] motion seeking dismissal or default," if he had received a short form of SGT's sanctions motion, he would have immediately requested additional briefing from the parties.[63]  Therefore any technical noncompliance with Local Rule 37-1 was essentially harmless.  In her Objection,

---

[60] *See* Dkt. 77 at 5.

[61] *See* Dkt. 73-4.

[62] *See* Dkt. 73-1 at 1–4; Dkt. 74-1 at 2–3.

[63] *See* Dkt. 77 at 5–6.

Martin attacks this ruling as "excus[ing] SGT's noncompliance" when generally "all parties must abide by . . . the local rules."[64]

First, as with Rule 37(a), it is not clear that Local Rule 37-1(b) applies when filing a motion for sanctions in response to noncompliance with a prior court order resolving the underlying discovery dispute.  Local Rule 37-1(b) applies to motions "for a court order to resolve the dispute," not motions for sanctions responding to violations of a court order already in effect.[65]  And prior decisions in this district suggest it is unnecessary for sanctions motions to be in short form when they arise out of violations to a prior discovery order.[66]

Here, Judge Pead already addressed the dispute around Martin's productions in his August 2020 Order addressing Martin's arguments against producing certain documents and setting a September 4 deadline for Martin to provide "a complete production."[67]  SGT's subsequent Motion for Sanctions sought to cure its alleged prejudice resulting from Martin violating the August 2020 Order; it did not seek additional rulings from Judge Pead resolving the underlying discovery dispute itself.[68]

Second, even if Local Rule 37-1(b) did apply, Judge Pead had discretion to decline to deny the motion outright despite it not being in short-form.  While judges "must follow local

---

[64] Dkt. 80 at 10.

[65] DUCivR 37-1(b)(1) ("If the discovery disputes remain after reasonable efforts, and the parties need a court order to resolve the dispute, the parties . . . must file a Short Form Discovery Motion, which should not exceed 500 words exclusive of caption and signature block.").

[66] *See, e.g.*, *Talbot v. Foreclosure Connection, Inc.*, No. 2:18-cv-169, 2020 WL 4365501, at *6–12 (D. Utah, July 29, 2020) (granting plaintiff's motion for sanctions despite defendants' argument that plaintiff "did not file a Short Form discovery motion" and did not "seek a meet and confer"); *City of Orem v. Evanston Ins. Co.*, No. 2:16-cv-425-JNP, 2018 WL 565715, at *1–2 (D. Utah Jan. 24, 2018) (granting full form motion requesting sanctions for failure to obey discovery order, which was issued in response to a short form motion to compel); *cf. Celtig, LLC v. Patey*, No. 2:17-CV-01086-JNP-EJF, 2019 WL 4563887, at *6 (D. Utah Aug. 19, 2019) (discussing multiple short form motions to compel, ultimately leading to long form motions seeking terminating sanctions), *report and recommendation adopted*, 2019 WL 4563648 (D. Utah Sept. 19, 2019).

[67] *See generally* Dkt. 71.

[68] *See* Dkt. 73.

rules when adherence furthers the policies underlying the rules, they have discretion in applying and interpreting local rules."[69]  Indeed, the case Martin cites to support her argument actually reinforces the exercise of discretion in applying the local rules.  Martin cites *Gatti v. Granger Med. Clinic, P.C.* for the principle that Local Rule 37-1 "governs any discovery disputes arising under Rules 26–37 and 45 of the Federal Rules of Civil Procedure, [and] requires a party to file a short form discovery motion" that "may not exceed 500 words."[70]  However, the magistrate judge in *Gatti* ultimately took up the challenged motions even though they "far exceed[ed] that word-count limit."[71]  Although he did not provide his reasoning for doing so, the judge acted within his discretion to consider the motions.[72]  Judge Pead likewise acted within his discretion, reasoning that any failure to abide by local rule 37-1 was inconsequential.[73]  Martin's attempt to argue otherwise is unavailing.

Local Rule 37-1(b) did not apply to SGT's Motion for Sanctions, and even if it did, Judge Pead did not act contrary to law by exercising his discretion to consider the motion even though it was not submitted in short form.

## II.    Judge Pead's Determination that Martin Failed to Comply with the August Order is Not Contrary to Law or Clearly Erroneous.

Martin next attacks the merits of Judge Pead's decision to impose sanctions.  First, she asserts he acted contrary to law by failing to consider her "good faith" belief that "her production

---

[69] *Hernandez v. George* 793 F.2d 264, 267 (10th Cir. 1986); *see also Pittman v. Fox*, 766 F.App'x 705, 711–12 (10th Cir. 2019) (applying discretionary principle from *Hernandez* to affirm magistrate judge's discretion in interpreting and applying local rules).

[70] No. 2:19-cv-00028-PMW, 2019 WL 6173749, at *1 (D. Utah Nov. 20, 2019).

[71] *Id.*

[72] *See id.*

[73] *See* Dkt. 77 at 5–6.

was complete."[74]  Relatedly, she challenges Judge Pead's factual determination that she did not comply with the August 2020 Order.[75]  Both arguments fail.

### A.  *Judge Pead did Not Act Contrary to Law by Not Addressing Whether Martin Held a Good-Faith Belief that her Production was Complete*

Martin asserts Judge Pead's determination that she failed to comply with the August 2020 Order is contrary to law because he misapplied Federal Rule of Civil Procedure 37(b) by failing to consider her assertion of a good faith belief that her productions were complete.

Rule 37(b) generally governs the issuance of sanctions when a party fails to comply with a discovery order.  Under Rule 37(b)(2), if a party fails to obey a discovery order, the court "may issue further just orders" to deter future misconduct and cure prejudice to the opposing party.[76]  Such orders may include dismissal of an action in whole or in part,[77] but only after applying the factors articulated in *Ehrenhaus v. Reynolds*,[78] and "only when these factors outweigh the judicial system's strong disposition to decide cases on the merits."[79]  Moreover, the decision to impose sanctions under Rule 37(b)(2), including the application of the *Ehrenhaus* factors, "remain[s] a discretionary function."[80]  Judge Pead correctly identified Rule 37(b)(2) as the governing federal rule for SGT's Motion, and properly applied the *Ehrenhaus* factors in stopping short of ordering dismissal, instead finding several less severe sanctions to be appropriate.

---

[74] Dkt. 80 at 6–8.

[75] *Id.*

[76] Fed. R. Civ. P. 37(b)(2).

[77] *See id.* R. 37(b)(2)(v).

[78] 965 F.2d 916 (10th Cir. 1992).

[79] *Cobb v. Benzon*, 2:18-CV-975-DAK, 2020 WL 3219804, at *1 (D. Utah Jun. 15, 2020) (*citing DeBardeleben v. Quinlan,* 937 F.2d 502, 504 (10th Cir. 1991)).

[80] *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011).

Martin does not object to Judge Pead's application of the *Ehrenhaus* factors, but rather argues Judge Pead applied the incorrect standard in determining whether Martin failed to obey the August 2020 Order.  That Order required Martin to provide "a complete production no later than September 4, 2020."[81]  Citing *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, an unreported case from the Northern District of Oklahoma, Martin argues "the measure of a 'complete production' is the producing party's 'good faith' belief that 'a complete production had been made.'"[82]  According to Martin, because she held a good faith belief that she had produced all responsive documents each time SGT approached her with its concerns, she had complied with the August 2020 Order, and Judge Pead erred by failing to consider "her good-faith assurances" when deciding whether to grant sanctions.[83]

In response, SGT first argues that *Edmondson* "is of no persuasive value" because the situation surrounding the production failure in that case is materially different from what happened here.  Second, Martin's good faith beliefs regarding her production are "legally irrelevant" in determining whether sanctions are appropriate because there is nothing in the text of Rule 37(b) to support requiring such a standard.[84]  SGT concedes that any good faith beliefs Martin might have harbored could be relevant to determining the type of sanctions warranted, but points out that Martin objected to the decision to impose sanctions generally rather than the imposition of any particular form of sanctions.[85]

---

[81] Dkt. 71 at 4.

[82] Dkt. 80 at 6 (quoting *Edmondson*, No. 05-CV-329-GKF-SAJ, 2008 WL 3403510, at *1 (N.D. Okla. Aug. 8, 2008)).

[83] *Id.*

[84] Dkt. 86 at 9.

[85] *Id.*

As to SGT's first argument, the court agrees and finds the circumstances in *Edmondson* distinguishable from those in this case for several reasons.  First, the court in *Edmondson* was analyzing a motion to compel production, not a motion for sanctions relating to violations of a prior discovery order.[86]  Second, the parties in *Edmondson* had resolved their dispute and produced the requested documents prior to the court taking up a motion to compel.[87]  Here, the dispute was far from resolved when Judge Pead took up the Motion for Sanctions, and numerous requested documents remained outstanding.  The circumstances in *Edmondson* stand in contrast to the situation here, where Martin continued to maintain there was "no dispute" she had "produced discovery responses and documents . . . as required by the [August 2020] Order"[88]— an assertion Judge Pead noted "keenly neglects to address the fulsomeness of [her] productions."[89]

As to SGT's second argument, this court declines to go so far as declaring that a party's good faith belief its production is responsive to a request is legally irrelevant.  Tenth Circuit precedent suggests this is something that can be considered when deciding whether to grant relief under Rule 37(b).[90]  Yet this recognition does not lead to the conclusion Martin desires either.  Rather than good faith belief being something that a judge reviewing a sanctions request *must* consider, case law in this Circuit suggests that this is merely one factor judges *may* take into

---

[86] *Edmondson*, 2008 WL 3403510, at *1.

[87] *Id.* ("The positions of the parties were adamantly maintained until shortly before the hearing, when a telephone conference was held between the experts for both sides in which the parties determined that essential files were, in fact, missing.  The parties were then able to identify and produce the missing files.  Once Plaintiff was aware of the specific omissions in regard to the file production, the situation was resolved.").

[88] Dkt. 74 at 7, 7 n.5.

[89] Dkt. 77 at 6.

[90] *See, e.g.*, *Norman v. Young*, 422 F.2d 470, 473 (10th Cir. 1970) (citing *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958)) (contrasting *Rogers*, wherein the court held Rule 37(b)(2) sanctions proper even though "there was an obvious good faith attempt to comply with the court order," with *Norman*, "where no such finding [of good faith] is permissible").

account when applying their discretion under Rule 37(b)(2)(A) in determining whether to impose sanctions and which sanctions to impose.[91]  As a result, Judge Pead was certainly free to consider whether Martin acted in good faith when failing to produce the specified documents, but he was not required to do so.  Thus, Judge Pead did not act contrary to law.

### B.   There was No Clear Error in Finding Martin Had Violated the August 2020 Order by Failing to Make Complete Productions

Martin next challenges Judge Pead's finding that she failed to make complete productions, pointing to the "thousands of pages of documents" she produced before SGT filed its Motion for Sanctions.[92]  She also objects to the finding that SGT was prejudiced by the delay in receiving certain documents, asserting SGT "literally asked for it" and "serial production is commonplace in litigation."[93]  This court does not find Judge Pead erred on either front.

First, Martin points to the August 2020 Order, which required Martin to "respond to [SGT's] First Set of Interrogatories and First Set of Requests for Production by September 4, 2020."[94]  Martin contends her production of the 916-page PDF file on August 21 complied with that directive by responding to the request.[95]  But her argument ignores Judge Pead's prior directive in the same order that she was "required to provide . . . a *complete* production no later than September 4, 2020."[96]  A mere response was not enough under the August 2020 Order.

---

[91] *See, e.g.*, *id.* at 473–74; *B & K Mech., Inc. v. Wiese*, No. 03-4149-RDR, 2005 WL 8160221, at *5 (D. Kan. Sept. 21, 2005) (declining to impose sanctions against defendant because defendant's "justification for withholding further production, while erroneous, was nonetheless held in good faith," but cautioning that future noncompliance with discovery obligations "could result in the imposition of stern sanctions").

[92] Dkt. 80 at 7.

[93] *Id.*

[94] *See* Dkt. 71 at 5.

[95] *See* Dkt. 80 at 3.

[96] *See* Dkt. 71 at 4 (emphasis added).

Martin's subsequent productions remained incomplete from SGT's perspective, and SGT provided ample evidence to Judge Pead as to why they were incomplete and nonresponsive to several of the specific type of documents it requested.  Judge Pead did not commit clear error by finding Martin did not comply with the August 2020 Order.

Martin's second argument, that Judge Pead committed clear error in finding SGT had been prejudiced, is similarly unavailing.  Judge Pead cited the "increased costs and delays" SGT incurred by Martin's continued failure to produce responsive documents, as well as its inability to "craft an informed defense" without receiving documents it considered critical to the outcome of the case.[97]  It is axiomatic that parties can be prejudiced by unjustifiable discovery delays because such delays lead to "mounting attorney fees."[98]  Judge Pead's finding that SGT had been unable to meaningfully develop its defense is also supported by the record.  For instance, one group of documents SGT cited as missing were those relating to the copyright registration and communications between Martin and the previous owner of SGT.[99]  Judge Pead's finding that SGT was prejudiced by Martin withholding these documents makes sense, because their existence and content would be central to the merits of any copyright infringement claim.

This court can discern no mistake in Judge Pead's factual findings regarding Martin's noncompliance with the August 2020 Order and the prejudice SGT experienced from that noncompliance.  Accordingly, no clear error was committed.

---

[97] *Id.* at 8–9.

[98] *See Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993) (recognizing "prejudice from delay and mounting attorney's fees") (internal quotation marks and citation omitted).

[99] Dkt. 73-7 at 1–2.

### III.   Judge Pead did not Err in Concluding Martin's Productions were in an Unacceptable Format

Lastly, Martin argues "Judge Pead erred in concluding that [her] pre-September 4 production was made in an impermissible format."[100]  Citing the declaration by her attorney, Martin assets the documents were presented to SGT "in the order and manner they were kept by Martin herself" because she "kept them in folders and boxes at her house."[101]  Martin contends this was in compliance with Federal Rule of Civil Procedure 35, which allows documents to be produced "as they are kept in the usual course of business," because she kept them folders and boxes rather than organized in an electronic format on her computer.[102]

But this argument fails to meaningfully address the rationale cited by Judge Pead in the Order Granting Sanctions.  Judge Pead found the "emails and thousands of other files produced by [Martin] were dumped together into a single folder, rather than with the original directory names or structures, and hundreds of files were blank or included random system files and documents unrelated to this action."[103]  Even assuming *arguendo* all the documents Martin produced were in fact kept in hard-copy format and none were stored digitally, Martin's argument does not establish the documents were produced as they were kept in the usual course. It is highly dubious that her usual course of business was to keep thousands of pages of documents in hard-copy format in one location in a completely disorganized manner—the physical equivalent of the format in which they were produced to SGT.  Therefore, Judge Pead did not err in concluding the documents had not been produced as they were maintained in the ordinary course.

---

[100] Dkt. 80 at 8 n.9.

[101] *Id.*

[102] *See id.*

[103] *Id.* (internal quotation marks and citations omitted).

Moreover, even if the documents had been produced as they were kept in the usual course of business, "when the requested documents are voluminous, the responding party has an obligation to organize the documents in such a manner that the requesting party may determine, with reasonable effort, which documents are responsive to its requests."[104]  Judge Pead cited this as additional support for concluding that Martin had not produced documents in an acceptable format,[105] and doing so was likewise not in error.

In sum, it was neither clearly erroneous nor contrary to law for Judge Pead to conclude the documents Martin did produce were produced in an unacceptable format.

## CONCLUSION

For the foregoing reasons, Martin's Objection to Judge Pead's Order Granting SGT's Motion for Sanctions is OVERRULED.  Martin is hereby ORDERED to comply with the terms of that Order to:

1.  Coordinate with SGT regarding Ms. Martin's engagement of an independent forensic ESI Vendor, to be paid for by Plaintiff.  Plaintiff shall provide the vendor access to all ESI repositories to which she has access (including all physical devices, e-mail accounts, and cloud storage), and have the vendor appropriately collect, process, and catalog all such ESI.  The vendor shall then make that material available to SGT for inspection and copying;

2.  No later than March 25, 2022, produce to SGT all documents that were in existence by October 9, 2020, that Plaintiff has withheld on the basis of a privilege or work product objection.

---

[104] *White v. Wiseman*, No. 2:16-cv-01179-CW-JCB, 2020 WL 3667493, at *2 (D. Utah, July 6, 2020).

[105] *See* Dkt. 77.

3.   Reimburse SGT all its reasonable expenses related to her prior document productions'
     improper formats and to the efforts SGT has made to secure her compliance with this
     Court's Orders, including the expenses associated with SGT's Motion for Sanctions.

4.   No later than March 21, 2022, the parties shall meet and confer and submit a proposed,
     stipulated amended scheduling order for review by the court.

5.   After SGT receives the ESI described above and any remaining outstanding productions,
     file a certification of "complete production."

SO ORDERED this 14th day of March, 2022.

                              BY THE COURT:

                              _____
                              ROBERT J. SHELBY
                              United States Chief District Judge