IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTINE MARTIN,<br><br>       Plaintiff,<br><br>v.<br><br>SGT, INC. f/k/a TGT, INC., a Wyoming corporation,<br><br>       Defendant. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OR RELIEF FROM JUDGMENT AND GRANTING IN PART DEFENDANT'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Case No. 2:19-cv-00289-RJS<br><br>Chief Judge Robert J. Shelby |

On December 28, 2022, the court granted terminating sanctions and an award of attorneys' fees and expenses for Defendant SGT, Inc. after concluding Plaintiff Christine Martin had altered and deleted material evidence.[1]  Now before the court are SGT's requests for attorneys' fees and expenses,[2] and Martin's Motion for Reconsideration or Relief from Judgment, requesting reconsideration of the court's attorney fee sanction.[3]  For the reasons explained herein, Martin's Motion is DENIED and SGT's requested attorneys' fees and expenses are GRANTED IN PART.

---

[1] Dkt. 142, *Memorandum Decision and Order Granting Defendant's Renewed Third Motion for Sanctions.*

[2] Dkt. 147, *Defendant's Brief in Support of Attorneys' Fees and Expenses*; Dkt. 188, *Defendant's Supplemental Brief in Support of Attorneys' Fees.*

[3] Dkt. 179.

## BACKGROUND AND PROCEDURAL HISTORY[4]

Martin filed this action alleging SGT exceeded the scope of a license to use her artwork, thereby breaching an oral contract between the parties.[5]  After protracted discovery mired by Martin's misconduct and "scattershot" document productions,[6] the court was alerted to uncontroverted evidence that she had altered and destroyed material evidence concerning the parties' oral contract.[7]  After reviewing the evidence, the court found—by clear and convincing evidence—that Martin had altered a July 2018 email to the owner of SGT, Timothy Tasker, by adding language helpful to her position, which was then forwarded to her counsel.[8]  The court further found that Martin had "deleted all other copies [of the email] in her possession which could be used to undermine her forgery," violating her obligation to retain materials related to the litigation.[9]  "By altering and destroying material evidence," the court concluded that Martin had "undermined the discovery process, her own credibility, the authority of the court, and the legitimacy of this litigation—which she initiated."[10]

In light of Martin's repeated discovery abuses and the misconduct surrounding the July 2018 email, the court determined "serious sanctions" were warranted.[11]  On December 28, 2022,

---

[4] The court assumes the parties' familiarity with the facts and procedural history of this long-running dispute, which has been detailed at length in previous court orders.  *See, e.g.*, Dkt. 142 at 2–15; Dkt. 120, *Order Overruling Plaintiff's Objection to Order Granting Sanctions* at 1–7; Dkt. 77, *Order Granting Defendant's Second Motion for Sanctions* at 1–3.  Therefore, the court will reiterate only the facts and procedural history relevant to the parties' latest briefings.

[5] *See* Dkt. 2, *Complaint and Jury Demand*.

[6] *See* Dkt. 142 at 1–11.

[7] *See id.* at 11–15.

[8] Whereas the unaltered email stated that Tasker was "buying intellectual property," Martin's subsequent production of the email stated he was "buying use of intellectual property," thereby supporting her contention that SGT had only purchased a license to use her artwork.  *See id.* at 11–15, 26–32.

[9] *Id.* at 30.

[10] *Id.* at 32.

[11] *Id.*

2

the court therefore granted SGT's Renewed Third Motion for Sanctions[12] and terminated Martin's lawsuit with prejudice.[13]  Additionally, the court determined SGT was entitled to an award of reasonable expenses associated with Martin's discovery misconduct and spoliation pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), which was assessed against Martin personally.[14]

The court's December 28, 2022 Order prompted a flurry of activity by Martin and her counsel.  First, on January 11, 2023, Martin's counsel[15] attempted to discontinue representation by filing a Notice of Withdrawal of Counsel.[16]  Because the withdrawal would leave Martin unrepresented even as she faced a substantial attorney fee sanction, the court directed counsel to comply with the withdrawal procedures of Local Rule 83-1.4(c).[17]  However, shortly thereafter, Martin obtained new counsel from the law firm of Zimmerman Booher,[18] and promptly filed a Notice of Appeal with the United States Tenth Circuit Court of Appeals.[19]  In particular, Martin appealed the court's "December 28, 2022 Judgment in a Civil Case . . . [and] all subsidiary rulings and orders leading to final judgment."[20]  Given the appearance of her new counsel, the court granted Martin's former counsels' request for leave to withdraw from representation.[21]

---

[12] Dkt. 126.

[13] Dkt. 142 at 44.

[14] *Id.* at 42–44.

[15] At the time, Martin's counsel consisted of Timothy B. Smith, Paul R. Smith, and Elena T. Vetter, all with the law firm of Parsons Behle & Latimer and formerly with the now-defunct law firm of Jones Waldo Holbrook & McDonough.  Hereafter, they will be referred to as her "former counsel."

[16] Dkt. 146.

[17] *See* Dkt. 150, *Notice of Deficiency* at 1 (citing DUCivR 83-1.4(c)).

[18] *See* Dkt. 154, *Notice of Appearance by Troy L. Booher*; Dkt. 155, *Notice of Appearance by Caroline Anais Olsen*; Dkt. 156, *Notice of Appearance of Dick J. Baldwin*.

[19] Dkt. 157.

[20] *Id.*

[21] *See* Dkt. 164, *Order Granting Motion to Withdraw as Counsel*.

3

While her appeal was pending, Martin responded to SGT's fee application[22] by arguing, among other things, that former counsel should pay for SGT's attorneys' fees and expenses "because the sanctions arose from counsel's conduct."[23]  She also claimed the spoliation of evidence "was an unfortunate accident" potentially caused by her "severe dyslexia . . . and processing disorder," rather than "an attempt to tamper with evidence."[24]  SGT disputed Martin's post hoc theory for the spoliation of the July 2018 email and challenged her argument as procedurally improper.[25]  Following SGT's objections, Martin submitted the present Motion for Reconsideration or Relief from Judgment under Federal Rules of Civil Procedure 54(b) and 60(b)(6), respectively, "to provide a procedural vehicle by which the court can exercise its discretion and impose attorney fee sanctions on prior counsel, rather than on [her]."[26]

In the following weeks, the Tenth Circuit abated Martin's appeal, "[i]n the interest of judicial economy," pending this court's "decision regarding the amount of attorney's fees and costs" owed to SGT.[27]  Additionally, the court received extensive briefing from SGT,[28] Martin,[29] and former counsel[30] concerning the reasonableness of SGT's fee request and Martin's argument

---

[22] Dkt. 147.

[23] Dkt. 175, *Plaintiff's Opposition to Defendant's Brief in Support of Attorneys' Fees and Expenses* at 1.  Martin's first Opposition, Dkt. 169 [SEALED], contained confidential content covered by the Standard Protective Order.  *See* Dkt. 174, *Plaintiff's Motion to Seal*.  Accordingly, Martin moved to seal her filing and then refiled the redacted Opposition as Dkt. 175.  Based on the foregoing, the court exclusively references Martin's redacted Opposition at Dkt. 175.

[24] Dkt. 175 at 6.

[25] *See* Dkt. 176, *Defendant's Objections to Plaintiff's New Evidence and Reply in Support of Attorneys' Fees and Expenses* at 5–12.

[26] Dkt. 179 at 2.

[27] *See* Dkt. 190-4, *Exhibit D: Order, Martin v. SGT, Inc., No. 23-4011*.

[28] *See* Dkt. 186, *Defendant's Opposition to Plaintiff's Motion for Reconsideration or Relief from Judgment*.

[29] *See* Dkt. 190, *Plaintiff's Reply in Support of Motion for Reconsideration or Relief from Judgment*; Dkt. 192, *Response to Defendant's Supplemental Brief in Support of Attorneys' Fees*; Dkt. 193, *Plaintiff's Response to Her Former Counsel's Brief Relating to Defendant's Request for Attorneys' Fees*.

[30] *See* Dkt. 191, *Plaintiff's Former Counsel's Brief Relating to Defendant's Request for Attorneys' Fees*.

that the court should shift the attorney fee sanction to former counsel.  Moreover, SGT filed a second fee request "for the work it performed post-judgment to recover the fees [previously] awarded to it."[31]  Upon full consideration of the parties' briefing, oral argument concerning Martin's Motion was heard on May 2, 2023,[32] and the matter taken under advisement.  For the reasons discussed below, the court DENIES Martin's Motion for Reconsideration or Relief from Judgment and GRANTS IN PART SGT's requested attorneys' fees and expenses.

## LEGAL STANDARDS

Martin proceeds under Rules 54(b) and 60(b)(6), which allow parties to request reconsideration of a prior court order or relief from a judgment or order, respectively.  Although not formally recognized by the Federal Rules of Civil Procedure, motions for reconsideration are generally construed under either Rule 54(b) or Rule 60(b), depending on when the motion is filed.[33]  Motions for reconsideration filed before entry of final judgment are construed under Rule 54(b), whereas motions for relief filed more than ten days after judgment are generally construed under Rule 60(b).[34]  Because there is some ambiguity regarding the finality of the court's December 28, 2022 Order and Judgment,[35] Martin moves for relief under both Rules, with Rule 54(b) as her primary procedural vehicle and Rule 60(b) as her alternate.[36]

---

[31] Dkt. 188 at 2.

[32] *See* Dkt. 194, *Minute Entry for Proceedings on May 2, 2023*.

[33] *See Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (citing Fed. R. Civ. P. 59(e), 60(b), and 54(b)).

[34] *See Gale v. Uintah Cnty.*, No. 2:13-cv-725-RJS-DBP, 2021 U.S. Dist. LEXIS 193345, at *5 (D. Utah Oct. 5, 2021) (discussing the distinction between Rule 54(b) and Rule 60(b) motions).

[35] The "question of finality" has been referred to the Tenth Circuit panel assigned to consider Martin's appeal, and thus the court will not opine on the finality of its December 28, 2022 Order and Judgment.  *See* Dkt. 190-4 at 2.

[36] Dkt. 179 at 3 ("[O]ut of an abundance of caution, [] Martin alternatively seeks relief under rule 60(b)(6), due to the extraordinary circumstances relating to the relief she seeks.").

Motions for reconsideration under Rule 54(b) may only be granted based on the availability of new evidence, an intervening change in the controlling law, or the need to correct clear error or prevent manifest injustice.[37]  A motion for reconsideration therefore may be granted only where "the court has misapprehended the facts, a party's position, or the controlling law"[38]—that is, "extraordinary circumstances."[39]  Importantly, motions to reconsider are improper when used to "revisit issues already addressed or advance arguments that could have been raised in prior briefing."[40]

Rule 60(b), by contrast, "permits a party to seek relief from a final judgment, and request reopening of [the] case, under a limited set of circumstances."[41]  Martin's specific ground for relief comes under Rule 60(b)(6), which affords courts "a grand reservoir of equitable power to do justice in a particular case."[42]  Relief under this subsection "is appropriate only when circumstances are so unusual or compelling that extraordinary relief is warranted or when it offends justice to deny such relief."[43]  Generally, the situation must be one beyond the control of

[37] *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995); *see also Pia v. Supernova Media, Inc.*, No. 2:09-cv-840-DN-EJF, 2014 U.S. Dist. LEXIS 175028, at *4 (D. Utah Dec. 18, 2014) ("There are three scenarios in which a litigant may successfully argue for reconsideration: when (1) substantially different, new evidence has been introduced; (2) subsequent, contradictory controlling authority exists; or (3) the original order is clearly erroneous." (internal quotation marks and citations omitted)).

[38] *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (explaining the nearly identical Rule 59(e) motion for reconsideration standard).

[39] *Van Skiver v. United States*, 952 F.2d 1241, 1244–45 (10th Cir. 1991).

[40] *Servants of the Paraclete*, 204 F.3d at 1012.

[41] *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022) (internal quotation marks and citation omitted).

[42] *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996).

[43] *Christ Ctr. of Divine Phil., Inc. v. Elam*, 831 F. App'x 903, 905 (10th Cir. 2020).

6

the party requesting relief under Rule 60(b)(6) to warrant relief.[44]  It is "not intended to allow a

party to present its argument on the merits as many times as it takes to get it right."[45]

## ANALYSIS

I.      **Martin's Motion for Reconsideration or Relief from Judgment**

A.  *Martin's Motion Must Be Construed Under Rule 60(b)*

The court first addresses whether Martin's Motion should be construed under Rule 54(b),

as she asserts, or Rule 60(b)(6).  As prefaced above, the finality of the court's December 28,

2022 Order and Judgment is unclear under Tenth Circuit case law, so Martin moves for relief

under both Rules.[46]  But she maintains that "[w]hat seems clear is that the attorney fee

sanction—as distinct from the terminating sanction—is not final because the court has not yet

reduced that award to a sum certain."[47]  Therefore, she contends that the court can, under Rule

54(b), reconsider its decision to assess the attorney fee sanction against her personally.[48]  SGT

counters that Martin already appealed the court's sanction by filing a Notice of Appeal, thereby

divesting this court of jurisdiction to reconsider its prior sanction.[49]

The Supreme Court explains, "[t]he filing of a notice of appeal is an event of

jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district

court of its control over those aspects of the case involved in the appeal."[50]  Yet, while a notice

---

[44] *Abraham v. WPX Energy Prod., LLC*, 322 F.R.D. 592, 605 (D.N.M. 2017) (citing *Ackermann v. United States*, 340 U.S. 193, 202, 71 S. Ct. 209, 95 L. Ed. 207 (1950); *Van Skiver v. United States*, 952 F.2d 1241, 1244–55 (10th Cir. 1991)).

[45] *Thunder Mt. Custom Cycles, Inc. v. Thiessen Prods.*, No. 06-cv-02527-PAB-BNB, 2008 U.S. Dist. LEXIS 105856, at *11–12 (D. Colo. Dec. 24, 2008) (citing *Cashner*, 98 F.3d at 580).

[46] Dkt. 179 at 3.

[47] *Id.*

[48] *Id.*

[49] *See* Dkt. 186 at 2–3.

[50] *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam).

of appeal narrows a district court's plenary jurisdiction over the case, its jurisdictional effect is not absolute.  The Federal Rules of Civil Procedure and Tenth Circuit case law contemplate a "jurisdiction phased de-escalation process" during the first twenty-eight days following entry of final judgment, wherein a district court "goes from pre-final judgment plenary jurisdiction . . . to limited review."[51]  After twenty-eight days following entry of final judgment, the district court's review is limited to requests for relief from judgment under Rule 60.[52]  However, even after filing a notice of appeal, the district court retains jurisdiction over certain "collateral matters not involved in the appeal," such as "the propriety and amount of attorney's fees."[53]

Martin does not dispute that her Motion was filed more than twenty-eight days following entry of the court's December 28, 2022 Order.[54]  But she argues the court can properly consider her Rule 54(b) request for reconsideration without disrupting the jurisdictional handoff with the Tenth Circuit because the "attorney fee sanction . . . is not final."[55]  In particular, she notes "the court has not yet reduced that award to a sum certain" and cites numerous Tenth Circuit cases holding that "an award of attorney's fees is final for purposes of appeal only after the amount is determined."[56]

---

[51] *Martinez v. Dart Transp., Inc.*, 547 F. Supp. 3d 1153, 1169 (D.N.M. 2021) (citing *Servants of the Paraclete*, 204 F.3d at 1012).

[52] *Van Skiver*, 652 F.2d at 1243; *see also Martinez*, 547 F. Supp. 3d at 1169 ("[T]he Federal Rules set forth a jurisdiction phased de-escalation process, wherein the district court goes from pre-final judgment plenary jurisdiction . . . to solely rule 60 review after twenty-eight days.").

[53] *Garcia v. Burlington N. R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987); *see also CGC Holding Co., Ltd. Liab. Co. v. Hutchens*, 780 F. App'x 604, 606 (10th Cir. 2019) ("[T]he district court loses jurisdiction over only 'those aspects of the case involved in the appeal,' and so it 'may address matters that are not comprehended within the appeal.'" (quoting *United States v. Madrid*, 633 F.3d 1222, 1226–27 (10th Cir. 2011))).

[54] *See* Dkt. 179 at 7.

[55] *Id.* at 3.

[56] *Id.* at 3–4 (quoting *Phelps v. Washburn Univ. of Topeka*, 807 F.2d 153, 154 (10th Cir. 1986) (internal quotation marks omitted)); *see also Phelps*, 807 F.2d at 154 ("[I]f an award of attorney's fees is not reduced to a sum certain, it is not final.").

While district courts generally retain jurisdiction to address the propriety and amount of attorneys' fees even after an appeal,[57] Martin limited the court's jurisdiction over the attorney fee sanction as a collateral matter when she requested Tenth Circuit review of her personal liability for attorneys' fees.[58]  Though Martin disputes the weight of the docketing statement used to flag her attorney fee question for the Tenth Circuit,[59] the court finds that the combined effect of her docketing statement and Notice of Appeal placed the attorney fee sanction beyond the realm of reconsideration.  At the moment she filed her Notice of Appeal, the court was "divest[ed] . . . of its control over those aspects of the case involved in the appeal,"[60] including the prudence of the court's attorney fee sanction.  Indeed, it can hardly be said the sanction is a "collateral matter[] not involved in the appeal" when it features prominently among Martin's requests for appellate review.[61]

Nevertheless, Martin points out that the Tenth Circuit granted her request to abate her appeal given some of the uncertainty around finality.[62]  Yet, while the Tenth Circuit has abated Martin's appeal "pending the . . . court's decision regarding the *amount* of attorney's fees and costs,"[63] the court does not read its order of abatement as broadly as Martin.  She argues that the Tenth Circuit's order allows the court to reconsider the attorney fee sanction and even shift the

---

[57] *See Tiscareno v. Frasier*, No. 2:07-cv-00336, 2015 U.S. Dist. LEXIS 161639, at *8 (D. Utah Dec. 1, 2015) (collecting Tenth Circuit cases).

[58] *See* Appellant's Docketing Statement at 3, Martin v. SGT Inc. et al., No. 23-4011 (10th Cir. Feb. 10, 2023) (requesting consideration of, among other questions, "[w]hether the court properly ordered [] Martin to personally pay attorney fees for her prior counsel's failure to produce documents with the proper organization and formatting"); Dkt. 157 at 1 (appealing "(i) the December 28, 2022 Judgment in a Civil Case [Dkt. 143], and (ii) all subsidiary rulings and orders leading to final judgment").

[59] *See* Dkt. 190 at 3.

[60] *Griggs*, 459 U.S. at 58.

[61] *See Garcia*, 818 F.2d at 721.

[62] *See* Dkt. 190 at 2.

[63] *See* Dkt. 190-4 at 2 (emphasis added).

9

fee to her former counsel.[64]  However, the order merely abates Martin's appeal, "[i]n the interest of judicial economy," until the court determines "the amount of attorney's fees and costs" owed by Martin.[65]  The Tenth Circuit has neither remanded the case nor signaled that the court should consider any aspect of the sanction beyond determining the amount of attorneys' fees and costs reasonably owed to SGT.  Accordingly, the court declines to read the Tenth Circuit's narrow order of abatement as restoring its jurisdiction to reconsider the attorney fee sanction placed at issue by Martin herself.[66]

### B.  Martin Does Not Qualify for Extraordinary Relief Under Rule 60(b)(6)

Although the court is jurisdictionally barred from reconsidering its attorney fee sanction under Rule 54(b), Martin also requests relief under Rule 60(b)(6).[67]  In contrast to other motions, the court retains jurisdiction to consider Rule 60(b) motions long after the filing of a notice of appeal.[68]  Where a party files a Rule 60(b) motion while an appeal is pending, Federal Rule of Civil Procedure 62.1 provides that the district court may: "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."[69]  While the Federal Rules and Tenth Circuit case law do not allow the court to outright grant Rule 60(b) motions, they clearly

---

[64] *See* Dkt. 190 at 2.

[65] Dkt. 190-4 at 2.

[66] *Compare id.* at 2 (abating Martin's appeal "pending the district court's decision regarding the amount of attorney's fees and costs"), *with Tiscareno*, 2015 U.S. Dist. LEXIS 161639, at *10 ("The Tenth Circuit's decision remanding the case to the district court for the express purpose of resolving the sanctions issue and any other collateral matters further confirms the collateral nature of the sanctions order.").

[67] *See* Dkt. 179 at 3.

[68] *See Burgess v. Daniels*, 576 F. App'x 809, 813 (10th Cir. 2014) (unpublished); *West v. Ortiz*, No. 06-1192, 2007 U.S. App. LEXIS 5700, at *17 n.5 (10th Cir. Mar. 9, 2007) (unpublished) ("[A] notice of appeal does not divest a district court of jurisdiction to consider a Rule 60(b) motion, although it prevents a district court from granting such a motion unless it notifies this court of its intention to grant the motion upon proper remand.").

[69] Fed. R. Civ. P. 62.1.

10

delineate that the court may at least consider the merits of such motions.[70]  It is pursuant to this principle that the court considers and ultimately denies Martin's Motion.

Martin offers several reasons the court should tap its "grand reservoir of equitable power" afforded under Rule 60(b) to shift the attorney fee sanction to former counsel.[71]  First, she argues her "prior counsel was responsible for most of the conduct that triggered sanctions,"[72] and the court should therefore shift the attorney fee sanction "so that the sanctions . . . better reflect the conduct that gave rise to them."[73]  Second, Martin avers former counsel obscured the reasons for the court's early discovery sanctions and dissuaded her from attending late-stage proceedings "to minimize [their] own role in the sanctioned conduct."[74]  Martin maintains that this conflict with her former counsel limited her ability to argue that they should bear the brunt of the attorney fee sanction.[75]  Finally, Martin attempts to explain the alteration and deletion of material evidence based, at least partly, on the email management practices she uses to cope with her "severe dyslexia" and "processing disorder."[76]  The court considers each argument through the lens of the extraordinary relief she seeks under Rule 60(b)(6).

---

[70] *See id.*; *Burgess*, 576 F. App'x at 813 (collecting cases).

[71] Martin does not clearly distinguish her arguments between her Rule 54(b) request for reconsideration and Rule 60(b)(6) request for relief.  Instead, she maintains that her arguments satisfy the standards for relief under all of the relevant Rules—54(b) and 60(b)(6).  *See* Dkt. 190 at 4–6.

[72] Dkt. 175 at 9.

[73] Dkt. 193 at 2.

[74] Dkt. 175 at 1–2.

[75] *See* Dkt. 179 at 6–7.

[76] *See* Dkt. 175 at 1–2, 6–8.

### i.      The Court's Allocation of Rule 37(b)(2)(C) Expenses

The court first considers Martin's contention that former counsel, rather than herself,

bears primary responsibility for the Rule 37(b)(2)(C) attorney fee sanction ordered by the court,

sufficient to warrant extraordinary relief under Rule 60(b)(6).[77]

In relevant part, Rule 37(b)(2)(C) provides that when a party fails to obey a discovery

order, "the court must order the disobedient party, the attorney advising that party, or both to pay

the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was

substantially justified or other circumstances make an award of expenses unjust."[78]  However,

neither Rule 37(b)(2)(C) nor Tenth Circuit case law clearly dictates how the court should allocate

these mandatory fees between the disobeying party and counsel.[79]

In the absence of controlling case law on how Rule 37(b)(2)(C) fees should be allocated,

the court looks first to Tenth Circuit cases where fees were assessed directly against counsel.  In

*Sun River Energy, Inc. v. Nelson*, for example, the Tenth Circuit affirmed a district court's

decision to assess Rule 37(b)(2)(C) fees directly against an attorney who knew about an

insurance policy that his client had a duty to disclose, but then denied its existence when asked

by opposing counsel.[80]  In the underlying case, the district court concluded the attorney "must be

viewed as *significantly culpable*," "regardless of [his] precise *mens rea* . . . in failing to . . .

---

[77] *See id.* at 1, 8–11; Dkt. 179 at 5 (seeking relief on these grounds under Rule 60(b)(6) in the alternative).

[78] Fed. R. Civ. P. 37(b)(2)(C).

[79] Some out-of-circuit courts contemplate an obligation to "determine 'how much responsibility is due to the client's recalcitrance and how much to the lawyer's condonance or participation in the client's disobedience'" when apportioning fees under Rule 37(b)(2)(C).  *See McDonald's USA, LLC v. Craft*, 326 F.R.D. 39, 41 (D.D.C. 2018) (quoting *Weisberg v. Webster*, 749 F.2d 864, 873–74 186 (D.C. Cir. 1984)).  Similarly, outside the Rule 37 context, the Tenth Circuit has long advised courts to follow an approach "designed to solve the management problem.  If the fault lies with the attorneys, that is where the impact of sanction should be lodged.  If the fault lies with the clients, that is where the impact of the sanction should be lodged."  *In re Baker*, 744 F.2d 1438, 1441 (10th Cir. 1984) (addressing the propriety of a district court sanction directly against counsel for various pre-trial delays).

[80] *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1223 (10th Cir. 2015).

disclose the existence of [the] insurance [policy]."[81]  Although it appears no other court has used "significant culpability" as the benchmark for assessing Rule 37(b)(2)(C) fees against counsel, sister court decisions generally confirm that there must be a compelling reason to do so—above and beyond mere incompetence or obstinance.  There appear to be two general circumstances where Rule 37(b)(2)(C) fees are assessed against counsel: (1) where counsel is *solely* responsible for the violation of a discovery order,[82] or (2) where counsel has a high degree of culpability relative to the disobedient party.[83]

Further afield, other circuits and district courts also recognize a high bar to assessing fees directly against counsel under Rule 37.[84]  Notably, the Third Circuit has held that an attorney

---

[81] *Sun River Energy, Inc. v. Nelson (Sun River I)*, No. 11-cv-00198-MSK-MEH, 2011 U.S. Dist. LEXIS 173688, at *13 (D. Colo. Mar. 7, 2013) (emphasis added).

[82] *See, e.g.*, *Quarrie v. Wells*, No. 17-350 MV/GBW, 2020 U.S. Dist. LEXIS 33816, at *8-9 (D.N.M. Feb. 27, 2020) (assessing Rule 37(b)(2)(C) fees against defense counsel where "[t]here [was] no indication that Defendants were responsible" for violating the court order and counsel "ask[ed] that any sanction . . . be against [them] alone"); *Farani v. Express Recovery Servs.*, No. 2:10-cv-331-DB-PMW, 2011 U.S. Dist. LEXIS 150714, at *15–16 (D. Utah Oct. 21, 2011) (assessing fees against counsel where "much of what Plaintiff did, or failed to do, . . . was done exclusively by Plaintiff's counsel long after communication with Plaintiff had ceased"), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 2006 (D. Utah Jan. 3, 2012).

[83] *See, e.g.*, *Sun River I*, 800 F.3d at 1223; *Porter Bridge Loan Co. v. Hentges*, No. 09-cv-593-JED-FHM, 2013 U.S. Dist. LEXIS 50210, at *15–16 (N.D. Okla. Apr. 8, 2013) (affirming magistrate judge's decision to assess fees against a disobeying party and its counsel, jointly and severally, where, among other things, counsel helped delay the discovery process and filed papers falsely asserting certain documents were not responsive to opposing counsel's requests).

[84] *See, e.g.*, *Naviant Mktg. Sols. v. Larry Tucker,* 339 F.3d 180, 185 (3rd Cir. 2003) ("Under Rule 37, an attorney may only be sanctioned for personally violating a discovery order or for advising a client to do so."); *Bolger v. District of Columbia*, 248 F.R.D. 339, 346–47 (D.D.C. 2008) (refusing to assess Rule 37 sanctions directly against counsel without "firm evidence that any counsel of record intentionally violated or sought to violate a discovery order or obligation"); *1st Tech., LLC v. Rational Enters.*, No. 2:06-cv-01110-RLH-GWF, 2008 U.S. Dist. LEXIS 106100, at *28–30 (D. Nev. July 29, 2008) (same); *see also Alden v. Mid-Mesabi Assocs. Ltd. P'ship*, No. 06-954 (JRT/RLE), 2008 U.S. Dist. LEXIS 123190, at *25 (D. Minn. Feb. 25, 2008) ("[I]t is far too facile to presume, in the absence of evidence to support a presumption, that simply because a client fails to responsibly allow discovery, her attorney should be blamed.  If, as the Defendants purport, [counsel] is involved in the abuses we have detailed, then he and his client can apportion the sanctions amongst themselves, consistent with their respective degrees of culpability.").

may be sanctioned under Rule 37 only for personally violating a discovery order or advising a client to do so.[85]

In awarding attorneys' fees and expenses to SGT under Rule 37(b)(2)(C), the court decided to assess them directly against Martin rather than her counsel.[86]  Martin challenges the court's allocation of the Rule 37(b)(2)(C) sanction on the basis that it is inconsistent with the stated reasons for granting the December 28, 2022 sanctions.[87]  She stresses that the December 28, 2022 Order discussed the relevance of both the alteration and deletion of the July 2018 email and the preceding discovery misconduct—the latter of which she attributes primarily to her former counsel.[88]  In particular, she contends that her "prior counsel waited to request an extension of time [for discovery] until two days past the deadline," leading her discovery to be untimely.[89]  She also maintains former counsel "did not explain that there were any problems with the way she had produced documents" or even that the court had sanctioned her for discovery misconduct.[90]  "Instead, she believed she had fulfilled her discovery obligations and that counsel was disclosing the documents."[91]

Former counsel disputes Martin's recollection of these events and disclaims any responsibility for the misconduct they frame as the primary cause of the December 28, 2022

---

[85] *Naviant,* 339 F.3d at 185 (3rd Cir. 2003); *see also Lambert v. Jariwala & Co.*, No. 18-17295 (ZNQ)(DEA), 2022 U.S. Dist. LEXIS 122346, at *16 (D.N.J. Apr. 28, 2022) (applying the same threshold).

[86] *See* Dkt. 142 at 42–44.

[87] *See* Dkt. 175 at 8–11 ("Imposing monetary sanctions against Ms. Martin's prior counsel is appropriate here because her prior counsel was responsible for most of the conduct that triggered sanctions . . . .").

[88] *Id.* at 11.

[89] *Id.* at 9.

[90] *Id.*

[91] *Id.*

sanctions: Martin's alteration and deletion of the July 2018 email.[92]  Counsel contends that "[w]ith the exception of a missed deadline near the beginning of discovery, [they] acted reasonably and diligently throughout the course of this case."[93]  Nevertheless, former counsel alleges "the documents produced by [] Martin were completely disorganized,"[94] and she was unwilling to undertake the effort to properly screen her files to ensure full and adequate disclosure.[95]  Martin's former lead attorney, Timothy B. Smith, further states that he kept Martin apprised of "all relevant case updates . . . [and] thoroughly discussed [the] sanctions entered . . . against her."[96]  Based on these circumstances, former counsel argues that the court's allocation of Rule 37(b)(2)(C) fees against Martin was proper.[97]

The competing narratives posed by Martin and her former counsel raise significant questions of credibility, negligence, causation, and professional responsibility—questions that are better left to a separate malpractice action benefiting from the full adversarial process, reciprocal discovery, and due process protections.[98]  While courts have seemingly broad discretion to assess fees against the "disobeying party, the attorney advising that party, or

---

[92] *See* Dkt. 191 at 4–5 ("Former Counsel believes that the email alteration was the ultimate reason the Court . . . grant[ed] terminating sanctions in this case.  Former Counsel had nothing to do with this.  Likewise, Former Counsel are not to blame for Ms. Martin's other discovery defalcations." (internal citations omitted)).

[93] *Id.* at 4.

[94] *Id.*

[95] Dkt. 191-1, *Exhibit 1: Declaration of Timothy B. Smith* ¶ 17.

[96] *Id.* ¶¶ 10, 12, 17.

[97] *See* Dkt. 186 at 3–7.

[98] *Cf. Harvey v. Yellow Freight Sys., Inc.*, 936 F. Supp. 790, 795 (D. Kan. 1996) (explaining that because parties choose an attorney as their representative, they are held accountable for their attorneys' acts and omissions and that "[a]ny recourse against [the] attorneys for their alleged malpractice must be brought in a timely, separate action against them.").

both,"[99] the factual disputes presented here weigh against unilaterally assessing the sanction against former counsel absent clear signs of misconduct.  Understandably, courts that have assessed Rule 37(b)(2)(C) sanctions directly against counsel have generally done so only for blatant or uncontested discovery abuses[100]—circumstances that are not clearly evident here.[101] Where there are hotly disputed facts and fingerpointing, some courts have concluded that the disobedient party and counsel are "best suited" to work out apportionment for themselves.[102]  On balance, the murky record now before the court calls for similar restraint.

However, even if the court was inclined to reconsider its prior allocation of the Rule 37(b)(2)(C) fees, it is jurisdictionally barred from doing so under the standards of Rule 54(b). Instead, the court's jurisdiction is limited to considering Martin's request under Rule 60(b)(6)— an exceptional recourse that "is appropriate only when circumstances are so unusual or

---

[99] Fed. R. Civ. P. 37(b)(2)(C); *see also Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 U.S. Dist. LEXIS 165702, at *56 (S.D.N.Y. July 18, 2017) ("The Court has wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel." (collecting cases)).

[100] *See, e.g.*, *KCI USA, Inc. v. Healthcare Essentials, Inc.*, No. 1:14CV549, 2018 U.S. Dist. LEXIS 118077, at *19–25 (N.D. Ohio July 16, 2018) (assessing Rule 37(b)(2)(C) attorney fee sanction against counsel "based on [their] assistance in the creation of fabricated evidence" and lack of candor with the court), *vacated for lack of notice*, 797 F. App'x 1002 (6th Cir. 2020); *Encana Oil & Gas (USA), Inc. v. Zaremba Family Farms, Inc.*, 2014 U.S. Dist. LEXIS 193514, at *1–2 (W.D. Mich. Mar. 3, 2014) (justifying the imposition of Rule 37(b)(2)(C) sanctions against defense counsel, for obstructive behavior and willful violation of a court order); *Yeboah v. United States*, 99 CIV 4923(JFK)(THK), 2000 U.S. Dist. LEXIS 15400, at *11–15 (S.D.N.Y. Oct. 20, 2000) (awarding sanctions against "counsel personally" where "his own conduct, including misrepresentations and repeated dishonored commitments, wasted the time and resources of [defendants] and the Court").

[101] Without opining on the competence of Martin's selected counsel, the court sees no indication former counsel was complicit in Martin's failure to produce files well after the discovery deadline or her alteration and deletion of the July 2018 email.  *See* Dkt. 142 at 2–15.

[102] *See, e.g.*, *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2019 U.S. Dist. LEXIS 166373, at *87-88 (S.D.N.Y. Sep. 26, 2019) (assessing Rule 37(b)(2)(C) sanction against plaintiffs and their counsel, jointly and severally, "permitting them to settle the issue without further public motion practice"); *Merck Eprova AG v. Gnosis S.P.A.*, 2010 U.S. Dist. LEXIS 38867, at *22 (S.D.N.Y. Apr. 20, 2010) (declining to apportion liability between the disobeying party and its counsel, "under the belief that they are best suited to make that decision, and out of concern that requiring them to disclose information sufficient to determine apportionment could compromise attorney-client confidentiality"); *Alden*, 2008 U.S. Dist. LEXIS 123190, at *25 (directing sanction solely against disobeying party, with the understanding that the party and counsel could "apportion the sanctions amongst themselves, consistent with their respective degrees of culpability.").

compelling that extraordinary relief is warranted or when it offends justice to deny such relief."[103]  While Martin argues that the court should have allocated all, or at least some, of the Rule 37(b)(2)(C) sanction to former counsel,[104] the court decided—following full consideration of the record before it—that she was the appropriate party to bear SGT's expenses.[105]  Her new allegations, while potentially relevant to questions concerning former counsel's competence or possible conflicts, do not demonstrate "a blatant error in the prior decision [that] would result in serious injustice if not corrected" or any other recognized ground for Rule 60(b)(6) relief.[106]  Therefore, the court declines to tap into the "grand reservoir of equitable power" afforded by Rule 60(b)(6) to reallocate the attorney fee sanction.

### ii.     Former Counsel's Purported Conflict of Interest and Incompetence

Beyond the context of Rule 37(b)(2)(C) fee-shifting, Martin retraces other areas where former counsel's performance fell below her expectations.  Among other purported lapses, Martin notes former counsel missed the deadline to respond to SGT's discovery requests,[107] failed to challenge the court's determination that she waived her discovery objections,[108] and did not rebut SGT's request for attorneys' fees and expenses.[109]  She further avers former counsel "failed to take any accountability" for the problems with her document productions and even dissuaded her from appearing for late-stage proceedings "because doing so allowed [them] to

---

[103] *Christ Ctr. of Divine Phil., Inc. v. Elam*, 831 F. App'x 903, 905 (10th Cir. 2020) (unpublished).

[104] *See* Dkt. 175 at 11.

[105] *See* Dkt. 142 at 42–44.

[106] *See Orient Mineral Co. v. Bank of China*, No. 2:98-CV-238BSJ, 2010 U.S. Dist. LEXIS 14533, at *101 (D. Utah Feb. 18, 2010) (discussing circumstances that meet the threshold for relief under Rule 60(b)(6)).

[107] Dkt. 175 at 3.

[108] *Id.* at 3–4.

[109] *Id.* at 8.

minimize [their] own role in the sanctioned conduct."[110]  Martin contends these circumstances

gave rise to a direct conflict with former counsel, which now warrants extraordinary post-

judgment relief under Rule 60(b)(6).[111]

Indeed, some courts have "considered the possibility that a severe and prejudicial

attorney conflict of interest might be enough to create 'extraordinary circumstances' and warrant

relief from a judgment under Rule 60(b)(6)."[112]  But these are usually extreme cases where, for

example, counsel had an undisclosed relationship with an opposing party[113] or represented

adverse co-defendants.[114]  It would be a remarkable expansion of the Rule 60(b)(6) grounds for

relief for the court to hold, as Martin appears to argue, that the expected tension between a party

and her counsel faced with Rule 37(b) sanctions and a spiraling lawsuit supports such an

exceptional remedy.[115]  In the absence of any direct authority supporting Martin's position,[116]

these circumstances do not warrant the exceptional remedy afforded by Rule 60(b)(6).

---

[110] *Id.* at 1–2, 4.

[111] *See* Dkt. 190 at 5 ("The basis for [] Martin's motion is that her prior counsel's interests were in direct conflict with [] Martin's interests in arguing that the court should impose attorney fee sanctions against her prior counsel.").

[112] *Stanley v. City Univ. of N.Y., John Jay Coll.*, No. 18-cv-4844 (AJN), 2020 U.S. Dist. LEXIS 217687, at *4 (S.D.N.Y. Nov. 19, 2020) (citing *Moskowitz v. Coscette*, 51 F. App'x 37, 38 (2d Cir. 2002)).  *But see Burton v. Bd. of Educ. for Chi.*, No. 17 C 1337, 2019 U.S. Dist. LEXIS 231860, at *8 (N.D. Ill. Jan. 14, 2019) ("Plaintiffs' claims of [counsel's] incompetence, disinterest, and conflict are not grounds for relief under either Rule 60(b)(1) or Rule 60(b)(6)."); *Pantoja v. Tex. Gas & Transmission Corp.*, 890 F.2d 955, 960 (7th Cir. 1989) ("Even if their allegations of attorney misconduct are true, Rule 60(b)(6) does not address their situation.  Instead, the plaintiffs' remedy lies against the attorney . . . .").

[113] *Stanley*, 2020 U.S. Dist. LEXIS 217687, at *6 (granting Rule 60(b)(6) relief where, among other defects, counsel for the plaintiff started working at the defendant college halfway through the representation).

[114] *Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C.*, 2011 U.S. Dist. LEXIS 110955, at *24 (E.D.N.Y. Sep. 27, 2011) (granting Rule 60(b)(6) relief where counsel "failed to address the blatant conflict of interest posted by his simultaneous representation" of co-defendants with adverse interests); *Marderosian v. Shamshak*, 170 F.R.D. 335, 342 (D. Mass. 1997).

[115] *See* Dkt. 175 at 10–11; 179 at 5–6.

[116] The two cases cited by Martin—*Ames v. Miller*, 184 F. Supp. 2d 566, 575 (N.D. Tex. 2002) and *Marderosian*, 170 F.R.D. at 340–42—do not stand for the proposition that a conflict between a client and counsel over fee-shifting or other sanctions supports Rule 60(b)(6) relief.  Instead, these cases deal with counsel who represented one client to the direct detriment of another client.  Moreover, the movants sought relief from the dismissal of claims and a jury verdict, respectively, not a fee sanction for which there is possible recourse through a malpractice action.

Likewise, former counsels' other purported shortcomings do not open the door to Rule 60(b)(6) relief.  While some courts have recognized that gross negligence by an attorney can provide a basis for Rule 60(b)(6) relief,[117] it is widely disfavored.[118]  The Tenth Circuit has specifically expressed a "strong predisposition . . . against [the] granting of 60(b) relief for inadequacy of a party's chosen counsel."[119]  "If a client's chosen counsel performs below professionally acceptable standards, with adverse effects on the client's case, the client's remedy is . . . a legal malpractice lawsuit against the deficient attorney."[120]

Martin alleges numerous lapses by former counsel, ranging from their failure to respond to SGT's discovery requests to discouraging her from attending the court's hearing on SGT's Renewed Third Motion for Sanctions.[121]  However, these allegations are vigorously disputed by former counsel,[122] and it is unclear from the record whether former counsels' shortcomings, if present, contributed to this outcome.  Ultimately, these intertwined questions of competence and causation are "properly addressed in a malpractice action," where the parties have the benefit of the full adversarial process and reciprocal discovery—"not under Rule 60(b)."[123]

---

[117] *See Al-Sabah v. Agbodjogbe*, No. 20-2375, 2021 U.S. App. LEXIS 33129, at *4–5 (4th Cir. Nov. 8, 2021) (collecting cases).

[118] *D'Angelo v. State Farm Fire & Cas. Co.*, 32 F. App'x 604, 605 (2d Cir. 2002) (holding that "[a]n attorney's misconduct only rises to the level contemplated by Rule 60(b)(6) in cases of 'constructive disappearance' or a similar inability to provide adequate representation"); *Longs v. City of S. Bend*, 201 F. App'x 361, 364 (7th Cir. 2006) ("Rule 60(b)(6) is unavailable when attorney negligence or other attorney misconduct is at issue.").

[119] *Thunder Mt. Custom Cycles*, 2008 U.S. Dist. LEXIS 105856, at *8 (citing *Nelson v. Boeing Co.*, 446 F.3d 1118, 1119–20 (10th Cir. 2006)).

[120] *Nelson*, 446 F.3d at 1119.

[121] Dkt. 175 at 8–11.

[122] *See* Dkt. 191 at 2–5.

[123] *See Thunder Mt. Custom Cycles*, 2008 U.S. Dist. LEXIS 105856, at *12; *see also Haynes v. Memmen*, No. 03-cv-00577-WYD-MEH, 2008 U.S. Dist. LEXIS 64998, at *3–5 (D. Colo. Aug. 5, 2008) ("[T]he conduct of Plaintiff's counsel is not 'a reason that justifies relief' from the judgment entered in this case, because Plaintiff may pursue a malpractice action against his attorney if his inability to prevail in this lawsuit is truly the result of his counsel's negligence."  (quoting *Nelson*, 446 F.3d at 1121)).

### iii.   Martin's Newly Offered Speculation Concerning the Alteration and Deletion of the July 2018 Email Does Not Warrant Extraordinary Equitable Relief

As her final basis for relief, Martin offers a new theory for how the July 2018 email was altered and deleted based on email management practices she uses to cope with her dyslexia and processing disorder.[124]  However, setting aside some of the questions raised by Martin's new theory, it is unclear how her proposed explanation procedurally aligns with her larger Rule 60(b)(6) request for relief.  Indeed, while a motion for reconsideration allows the court to revisit its orders where it "misapprehended the facts, a party's position, or the controlling law,"[125] the court is jurisdictionally barred from reconsidering the attorney fee sanction at this juncture.[126]

Instead, Martin must rely on the court's "grand reservoir for equitable power" under Rule 60(b)(6),[127] which is reserved for "extraordinary circumstances and only when necessary to accomplish justice."[128]  Upon full consideration of the record and the parties' briefings, the court does not deem Martin's speculation an extraordinary circumstance warranting relief under Rule 60(b)(6).

In sum, none of Martin's arguments convince the court that extraordinary relief is justified under Rule 60(b)(6).  In effect, she asks the court to subsume an adequate remedy at law—a state malpractice action—with equitable principles reserved for only the most extraordinary circumstances.[129]  And there are ample reasons to refrain from doing so.  As noted

---

[124] *See* Dkt. 175 at 2 ("Martin has severe dyslexia and a processing disorder, which make written communication difficult.  She has compensated for her disability in a variety of ways, including occasionally revising emails that have already been sent for the purpose of resending the email to clarify the prior communication.").

[125] *Cf. Servants of the Paraclete*, 204 F.3d at 1012.

[126] *See supra* Section I.A.

[127] *See* Dkt. 179 at 3, 7; Dkt. 190 at 9.

[128] *Cashner*, 98 F.3d at 579.

[129] *Id.*

above, federal courts are generally ill-equipped and unwilling to adjudicate hyper-factual

disputes about attorney competence and causation as part of a Rule 37(b)(2)(C) sanction.[130]

Here, it would almost certainly require giving short shrift to the procedural safeguards and

reciprocal discovery provided by a separate malpractice action.  It would also likely compel

SGT—now relegated to the role of interested bystander—to continuing incurring legal expenses

to safeguard their hard-fought sanctions against a party opponent.  Therefore, the court denies

Martin's Motion and turns to the last question properly before the court—the amount of

attorneys' fees and expenses reasonably owed to SGT for Martin's misconduct under Rule

37(b)(2)(C).

## II.      Reasonable Attorneys' Fees and Expenses

SGT requests a total of $232,119.79 in attorneys' fees and expenses, reflecting

$190,421.29 related to the court's attorney fee sanction under Rule 37(b)(2)(C)[131] and a further

$41,698.50 for SGT's post-judgment efforts to obtain those fees.[132]   With respect to its

requested award under Rule 37(b)(2)(C), SGT maintains it "paid all of the invoiced fees and

expenses in full,"[133] and submits extensive records supporting its requested attorneys' fees and

expenses.[134]  For the reasons discussed below, the court GRANTS IN PART SGT's requested

fees and expenses under Rule 37(b)(2)(C), with mandatory deductions of $26,372 for attorneys'

---

[130] *See, e.g.*, *Infomir*, 2019 U.S. Dist. LEXIS 166373, at *87–88; *Merck Eprova AG*, 2010 U.S. Dist. LEXIS 38867, at *22; *Alden*, 2008 U.S. Dist. LEXIS 123190, at *25.

[131] SGT requests $177,869.95 in attorneys' fees and $12,551.34 in costs and expenses.  *See* Dkt. 147 at 2.

[132] Dkt. 188 at 2.

[133] Dkt. 147 at 2.

[134] *See* Dkt. 148, *Declaration of Timothy P. Getzoff*; Dkts. 148-1–23, *Exhibits A–W: Monthly Invoices from October 2020 to September 2022*; Dkt. 148-24, *Exhibit X: Summary Table of Fees and Expenses*; Dkt. 149, *Declaration of Stephen M. Sansom*; Dkt. 189, *Declaration of Timothy P. Getzoff*; Dkts. 189-1–3, *Exhibits 1–3: Monthly Invoices from February 2023 to April 2023*; Dkt. 189-4, *Exhibit 4: Summary Table of Supplemental Fees and Costs*.

fees that were not caused by Martin's misconduct and $437.50 for unconnected expenses.  The court also GRANTS SGT's requested post-judgment attorneys' fees, leading to a total award of $205,310.29.

As previously discussed, Rule 37(b)(2)(C) requires the court to "order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the [party's] failure" to comply with a discovery order.[135]  Implicit in this language are two requirements that ultimately guide the court's assessment of SGT's fee application: (1) any award must have been caused by Martin's violation of a discovery order and (2) the award must be reasonable.[136]  The court addresses each of these requirements in turn.

### A.  *Fees and Expenses Caused by Martin's Misconduct*

In the larger context of Rule 37(b)(2), the Tenth Circuit cautions that any sanctions assessed for violations of a discovery order must be "proportional to the specific violations of the rules."[137]  To that end, the court "must generally limit its sanction to those expenses and attorney's fees directly attributable to a party's sanctionable conduct."[138]  In other words, "but for the party's actions, the funds to pay the cost would have been allocated differently."[139]

In the absence of a fully developed argument on the matter of Rule 37(b)(2)(C) fees, the court declined SGT's request for all litigation expenses accrued during the entirety of fact discovery.[140]  Instead, based on the "parties' filings . . . and the circumstances of the

---

[135] Fed. R. Civ. P. 37(b)(2)(C).

[136] *Id.*; *see also Optrics Inc. v. Barracuda Networks Inc.*, No. 17-cv-04977-RS (TSH), 2021 U.S. Dist. LEXIS 21738, at *28 (N.D. Cal. Feb. 4, 2021) ("Fee awards, if awarded, are subject to two conditions. . . . The award must be limited to fees directly resulting from the violation, and the fees awarded must be reasonable.").

[137] *Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1557 (10th Cir. 1996).

[138] *Faraday*, 2021 U.S. Dist. LEXIS 145941, at *9 (citing *Olcott*, 76 F.3d at 1557 (10th Cir. 1996)).

[139] *Id.*

[140] *See* Dkt. 142 at 43–44.

longstanding discovery disputes," the court awarded SGT a narrower range of attorneys' fees and expenses for the discovery period from September 5, 2020 up to December 28, 2022, encompassing SGT's Second Motion for Sanctions, Third Motion for Sanctions, and Renewed Third Motion for Sanctions.[141]  Martin does not challenge the time range for sanctions, nor does she argue that any of SGT's proffered expenses were unrelated to the discovery misconduct—rather, she places the blame for that misconduct on her former counsel.[142]  Nevertheless, the court is duty-bound by Rule 37(b)(2)(C) to closely scrutinize SGT's fee application to ensure that all recovered expenses were caused by Martin's discovery abuses.[143]

The depth and pervasiveness of Martin's discovery misconduct exacerbated SGT's litigation expenses at nearly every turn, requiring counsel to needlessly expend hundreds of hours parsing through unorganized productions and preparing motions for sanctions.[144]  Though these factors support the conclusion that SGT's litigation expenses over the past two years largely resulted from Martin's misconduct, the court discerns two workstreams that would have been necessary regardless of her misconduct.  First, SGT had an obligation to produce unprivileged materials for Martin's review as part of the discovery process whether or not Martin did the same.[145]  However, SGT's time records show 23.8 hours billed for its own document

---

[141] *Id.*

[142] *See* Dkt. 175 at 11–18.

[143] *See Bindner v. Traub*, No. 21-492 GBW/SCY, 2022 U.S. Dist. LEXIS 181317, at *4 (D.N.M. Oct. 4, 2022) (removing expenses that were not caused by the violation of a discovery order from an award under Rule 37(b)(2)(C)); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, n. 5, 197 L. Ed. 2d 585 (2017) ("Rule-based and statutory sanction regimes similarly require courts to find . . . a causal connection before shifting fees." (citing Fed. R. Civ. P. 37(b)(2)(C))).

[144] *See* Dkt. 142 at 2–15; Dkts. 148-1–23.

[145] *See Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 308 (D. Kan. 1996) ("A party may not withhold discovery solely because it has not obtained to its satisfaction other discovery."); *see also Alifax Holding Spa v. Alcor Sci., Inc.*, No. 14-440 WES, 2019 U.S. Dist. LEXIS 5823, at *5-6 (D.R.I. Jan. 11, 2019) ("Each party has an independent obligation to produce relevant, discoverable information.  [One party's] obligations are not contingent on [the other's] performance." (collecting cases)).

productions and discovery responses during the sanction period.[146]  Second, SGT seeks reimbursement for 8.4 hours examining the authorship of Martin's artwork and developing what appears to be a related legal strategy.[147]  While these steps were possibly prompted by Martin's lackluster productions, they appear related to a strategy to undermine Martin's credibility on the merits of her claim.[148]  In any event, the court finds that these workstreams were not caused by Martin's misconduct and hence cannot be recovered under Rule 37(b)(2)(C).[149]

In total, the court determines that 42.7 hours must be deducted from SGT's fee request under Rule 37(b)(2)(C) because they were not caused by Martin's discovery misconduct.  These hours were billed during the three months before Martin's misconduct came to dominate the course of litigation—from September to November 2020.[150]  In addition to the 32.2 hours deducted for the two unrelated workstreams discussed above, the court will deduct half of the hours expended on other workstreams during the same period to account for SGT's efforts that were unrelated to Martin's misconduct.[151]  Finally, the court will deduct $10,000 to account for tasks that would have been necessary regardless of the discovery abuses for the remainder of the

---

[146] *See* Dkt. 148-1 at 3–5; Dkt. 148-2 at 3–6 (referencing counsel's efforts related to document collection, production, and discovery responses).

[147] *See* Dkt. 148-3 at 4 (referencing conferrals between Simler and Getzoff regarding SGT's "strategy on false copyright" and related tasks).

[148] *See id.* (reflecting Simler's legal research on the "effect of false statements/omissions in registration application" and concomitant investigation of the "prior publication/true authorship" of Martin's artwork).

[149] *Cf. Goodyear*, 581 U.S. at 108–09 (explaining "the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party," which is "appropriately framed as a but-for test").

[150] *See* Dkts. 148-1–3.

[151] *Cf. Fox v. Vice*, 563 U.S. 826, 838, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) ("[T]he district court need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a request for attorney's fees should not result in a second major litigation." (quotations and citations omitted)).

sanction period, leading to a total deduction of $26,372.[152]  These deductions are summarized as

follows:

| Deductions for Tasks Not Caused by Martin's Misconduct | | | | |
|---|---|---|---|---|
| Workstream | Timekeeper | Hours | Hourly Rate[153] | Deduction |
| Discovery Responses / Related Tasks | BNS | 19.4 | $395 | $7,663 |
| | TPG | 0.7 | $575 | $403 |
| | CER | 3.7 | $190 | $703 |
| Copyright Strategy / Authorship Investigation | BNS | 8.0 | $395 | $3,160 |
| | TPG | 0.4 | $575 | $230 |
| 50% Deduction of Other Tasks (September – November 2020) | BNS | 5.2 | $395 | $2,054 |
| | SMS | 0.3 | $575 | $173 |
| | TPG | 2.2 | $575 | $1,265 |
| | CER | 1.8 | $190 | $342 |
| | RJG | 2.0 | $190 | $380 |
| General Deduction | | | | $10,000 |
| **Total** | | **42.7** | | **$26,372** |

### B.  Reasonableness of SGT's Requested Fees and Expenses

Next, the court considers the reasonableness of SGT's fee request.  In determining the

reasonableness of a request for attorneys' fees under Rule 37, district courts in the Tenth Circuit

generally employ the familiar "lodestar" approach by multiplying counsel's hours reasonably

spent on the litigation by a reasonable hourly rate.[154]  Under the lodestar approach, the party

requesting the fees—SGT—bears the burden to "prove and establish the reasonableness of each

---

[152] *See Malloy*, 73 F.3d at 1018.

[153] Because these time entries were entered at the beginning of the sanction period, the court assumes that SGT's low-end hourly rates apply.  *See* Dkt. 148 at 7–9 (stating the hourly rate ranges for Holland & Hart timekeepers during the sanction period).

[154] *See Bindner*, 2022 U.S. Dist. LEXIS 181317, at *2 (applying the lodestar approach to determine the reasonableness of requested fees under Rule 37(b)(2)(C)); *Emuveyan v. Ewing*, No. 2:19-cv-00616, 2022 U.S. Dist. LEXIS 157871, at *4 (D. Utah Aug. 29, 2022) (applying lodestar approach to determine the reasonableness of a request to shift fees accrued from a successful motion for spoliation); *Webb v. Cty. of Stanislaus*, No. 2:21-mc-00696-JNP-JCB, 2022 U.S. Dist. LEXIS 78387, at *7 (D. Utah Apr. 29, 2022) (applying the lodestar method for calculating attorneys' fees as a discovery sanction under Rule 37(a)(5)(A)).

dollar, each hour, above zero."[155]  SGT must also provide evidence supporting the hours worked

and the claimed rate.[156]  Where this is found lacking, "the district court may reduce the award

accordingly."[157]

### i. *Reasonable Hours*

"[T]he first step in calculating the lodestar [is to] determin[e] the number of hours

reasonably spent by counsel for the party seeking fees."[158]  In assessing the reasonableness of

counsel's claimed hours, the court considers: "(a) whether the hours are supported by adequate

billing records; (b) whether the attorney has exercised billing judgment; and (c) whether the

hours pended on each task are reasonable."[159]

### a. *Billing Records*

The fee applicant must submit to the court "meticulous, contemporaneous time records

that reveal, for each lawyer for whom fees are sought, all hours for which compensation is

requested and how those hours were allotted to specific tasks."[160]  SGT's counsel has submitted

detailed contemporaneous time records and billing statements covering the period from

September 5, 2020 to the court's sanction hearing on August 23, 2022.[161]  During this nearly

two-year period, counsel's records show they spent over 400 hours litigating SGT's requests for

sanctions and conducting fact discovery.[162]  Additionally, the lead attorney for SGT, Timothy P.

---

[155]  *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) (internal quotation marks omitted).

[156] *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 139 (1983).

[157] *Id.* at 432.

[158] *Case by Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).

[159] *Webb*, 2022 U.S. Dist. LEXIS 78387, at *8 (citing *Case*, 157 F.3d at 1250).

[160] *Case*, 157 F.3d at 1250.

[161] *See* Dkts. 148-1–23.

[162] *Id.*

Getzoff, provides further context on counsel's representation during the relevant period, supported by the aforementioned records from his law firm, Holland & Hart.[163]

While Martin generally does not challenge the adequacy of SGT's billing records, she critiques the method used by SGT to deduct the court's prior sanction award from its current request.[164]  Instead of eliminating specific time entries associated with the prior award, SGT simply subtracted the prior award amount, $41,557.13, from its claimed attorneys' fees accrued during the relevant sanction period.[165]  Martin argues, with some merit, that "SGT's method . . . obfuscates the specific entries for which it is *currently* seeking fees."[166]  Recognizing this deficiency, the court presumes that all billing entries provided by SGT to support their present fee applications do not relate to the prior award.[167]

### b. *Billing Judgment*

Next, the court must ensure SGT's counsel properly "exercised billing judgment."[168] "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended."[169]  In doing so, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[170]

---

[163] Dkt. 148.

[164] *See* Dkt. 175 at 12.

[165] *See* Dkt. 147 at 4 ("SGT's prior fee award included fees and expenses incurred during the same period as the present award, for the same tasks . . . . As such, SGT subtracted $41,557.13 . . . from its current fee and expense request.").

[166] Dkt. 175 at 12.

[167] *Cf. Case*, 157 F.3d at 1250 (noting that courts may reduce an attorney's claimed hours if the "time records are 'sloppy and imprecise'" (citation omitted)).

[168] *Id.*

[169] *Id.* (citations omitted).

[170] *Hensley*, 461 U.S. at 434.

Getzoff avers he subtracted the court's prior sanction from the fee request, as well as any fees predating the start of the relevant sanction period.[171]  However, no other deductions were deemed necessary.[172]  Additionally, SGT claims that all of counsel's claimed hours "were reasonably incurred in tasks necessary to litigating this action,"[173] and that all corresponding invoices were "paid in full."[174]

Martin challenges her opposing counsel's billing judgment on the grounds that the claimed hours necessarily reflect "duplicative time," such as time spent by attorneys familiarizing themselves with the facts of the case.[175]  In particular, Martin contends "at least 20 hours of Mr. [Ryan H.] Seewald's time" should be reduced to account for the time he spent taking over for associate Benjamin N. Simler, who left Holland & Hart during the representation.[176]  Yet, beyond assuming that Seewald necessarily spent time familiarizing himself with the case, Martin does not point to any time entries for duplicative or unnecessary work by Seewald, or any other counsel for that matter.[177]  On the contrary, the court has

---

[171] Dkt. 148 ¶¶ 13, 16.

[172] Dkt. 147 at 7.

[173] *Id.*

[174] *Id.* at 4.

[175] *See* Dkt. 175 at 17–18.

[176] *Id.* at 17; *see also* Dkt. 95, *Notice of Withdrawal of Counsel for Benjamin N. Simler.*

[177] *See* Dkt. 175 at 17–18; *see also Mglej v. Gardner*, No. 2:13-cv-00713-CW, 2022 U.S. Dist. LEXIS 102834, at *5 (D. Utah June 7, 2022) (declining to reduce a fee amount where "Defendant fail[ed] to identify which billings [were] redundant or superfluous but rather conclude[d] that . . . work . . . should be excluded for the sole purpose that it takes time to bring each attorney up to speed").

meticulously reviewed the billing records for Seewald and other counsel, and discerns no entries for duplicative or non-compensable work.[178]

Finally, Martin broadly contests that "[t]he number of hours billed by SGT was greatly disproportionate to the amount of time and work that was reasonably necessary."[179]  But again, she does not provide any examples of time entries that are unreasonable or unwarranted under the circumstances.[180]  SGT's counsel had no way of knowing that recoverable fees were even possible until the later stages of this litigation, and thus they had every reason to carefully scrutinize their monthly bills to their client when they were first sent.[181]  The resulting billing record—reflecting less than 500 hours for two years of contentious discovery disputes[182]— reflects a reasonably constrained billing practice by SGT's counsel.  Therefore, the court finds that counsel's billing judgment was proper and declines to reduce SGT's requested fee award on the grounds argued by Martin.

 *c. Reasonableness of Hours*

Finally, the court "look[s] at the hours expended on each task to determine if they are reasonable."[183]  In assessing the reasonableness of counsel's claimed hours, the court acts "much as a senior partner in a private law firm would review the reports of subordinate attorneys when

---

[178] Seewald's time entries first appear in the invoice for December 2021.  *Dkt. 148-15* at 3.  At the outset, his efforts were focused on analyzing the circumstances of the July 2018 email, with no indication that he billed for any time reviewing background materials or transitioning onto the case.  *See Yost v. Stout*, No. 06-4122-JAR, 2009 U.S. Dist. LEXIS 149983, at *11 (D. Kan. Dec. 4, 2009) (declining to reduce fees where, despite plaintiff's contention that attorneys "necessarily spent time coming up to speed," the court saw "no indication that . . . timekeepers billed time researching background material").

[179] *See* Dkt. 175 at 18.

[180] *Id.*

[181] *See* Dkt. 176 at 17 ("To be clear, SGT's counsel avoided charging for duplicative work because doing so would be a disservice to SGT, who reviewed and paid the invoices as they were issued.  *See* Dkt. 148 ¶¶ 8, 9. Neither SGT nor Holland & Hart had any expectation of being reimbursed for fees at the end of this case.").

[182] *See* Dkts. 148-1–23.

[183] *Case*, 157 F.3d at 1250 (quotations and citations omitted).

billing clients."[184]  The court may reduce the hours claimed by counsel that were "unnecessary, irrelevant and duplicative."[185]  As part of this analysis, the court typically considers the factors set forth in *Case by Case v. Unified Sch. Dist. No. 233*[186] and *Johnson v. Georgia Highway Exp., Inc.*[187]  However, there has been some deviation among sister courts as to whether this additional analysis is necessary in the context of an attorney fee sanction under Rule 37.[188]  Given the substantial sum sought by SGT, the court opts to briefly discuss the relevant *Case* and *Johnson* guideposts to the extent they are relevant to SGT's request.

First, the *Case* factors generally support the fees sought by SGT.  While Martin's claim was not necessarily a complicated one, this case quickly devolved into an acrimonious and difficult affair, requiring extensive maneuvering by SGT's counsel.[189]  Over the course of more than two years, counsel was required to press for documents and metadata, review voluminous

---

[184] *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quotations and citation omitted).

[185] *Case*, 157 F.3d at 1250.

[186] In making the reasonableness determination, the court "considers the following factors: (1) 'the complexity of the case,' (2) 'the number of reasonable strategies pursued,' (3) 'the responses necessitated by the maneuvering of the other side,' and (4) 'the potential duplication of services.'"  *Utah Physicians for a Healthy Env't., Inc. v. Diesel Power Gear, LLC*, No. 2:17-cv-00032-RJS, 2021 U.S. Dist. LEXIS 15091, at *7 (D. Utah Jan. 26, 2021) (quoting *Case*, 157 F.3d at 1250).

[187] 488 F.2d 714, 717–19 (5th Cir. 1974) (stating that when considering the reasonableness of attorney fees, the court should consider: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases); *see also Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (stating that the Tenth Circuit applies the twelve *Johnson* factors in statutory fee cases).

[188] In *Pipeline Prods. v. Madison Cos., LLC*, a sister court observed that "courts more often consider the *Johnson* factors when awarding compensatory attorneys' fees under a fee-shifting statute rather than when assessing attorneys' fees as a punitive sanction."  No. 15-4890-KHV, 2019 U.S. Dist. LEXIS 121072, at *7 n.1 (D. Kan. July 19, 2019).  In the absence of briefing from the parties on the relevant *Johnson* factors, the *Pipeline Prods.* court declined to conduct a separate analysis expressly considering the *Johnson* factors.  *Id.  But see Vehicle Projects v. Icarpets, Inc.*, No. 16-cv-01013-RBJ, 2018 U.S. Dist. LEXIS 238474, at *15 (D. Colo. Mar. 23, 2018) (referencing the *Johnson* factors in assessing an attorneys' fee sanction under Rule 37).

[189] *See* Dkt. 142 at 2–15.

and "scattershot" document productions, and litigate multiple rounds of nuanced sanctions before the court—leading to a rare outcome of terminating sanctions.[190]  Rather than billing for duplicative efforts, counsel's claimed hours seem reasonably constrained given the circumstances of the past two years and counsel's concentrated efforts to uncover the alteration and deletion of material evidence.

The *Johnson* factors lend further support to the reasonableness of SGT's fee request. While the court need not discuss every *Johnson* factor, several are particularly relevant here.[191] First, the past two years of discovery have required extensive time and labor from SGT's counsel to not only uncover the spoliation of the July 2018 email,[192] but also repeatedly litigate sanctions before the court.[193]  Second, the case required counsel to address difficult questions surrounding Martin's culpability and the appropriateness of severe terminating sanctions absent direct evidence of wrongdoing.[194]  Third, SGT's counsel proved to be capable attorneys with an exacting attention to detail.  As a result, they were able to discover Martin's discovery abuse and litigate an early end to her lawsuit given the rampant discovery misconduct.[195]  Having considered the rest of the *Johnson* factors, the court concludes that these factors either support the reasonableness of SGT's requested fees or have little bearing on the present case.

In sum, the court declines to reduce the number of hours claimed by SGT beyond the mandatory deductions for time entries that were not caused by Martin's misconduct.

---

[190] *Id.* at 2–15, 44.

[191] *See Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

[192] *See* Dkt. 142 at 2–15; Dkts. 148-1–23.

[193] *See* Dkt. 73, *SGT's [Second] Motion for Sanctions*; Dkt. 104, *SGT's Third Motion for Sanctions*; Dkt. 126.

[194] *See* Dkt. 126 at 15–24.

[195] *See* Dkt. 142 at 44.

### ii.  *Reasonable Rates*

The court next reviews the reasonableness of SGT's claimed hourly rates.  As "[t]he party requesting fees," SGT bears "the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[196]  In contrast to the broad discretion generally afforded to district courts assessing attorneys' fees, the Tenth Circuit admonishes district courts not to "ignore[] the parties' market evidence and set[] an attorney's hourly rate using the rates [they] consistently grant[]."[197]  Moreover, courts may not use their "own knowledge to establish the appropriate rate unless the evidence of prevailing market rates . . . is inadequate."[198]

The "relevant market" in this case is the Salt Lake City, Utah legal market.[199]  SGT's lead counsel, Getzoff, claims an hourly rate of $575 to $695 for himself, $395 to $415 for Simler, $385 for partner Jessica Smith, $315 to $380 for Seewald, and $190 to $255 for paralegal and other litigation support.[200]  SGT also presents a declaration from partner Stephen Sansom, who claims an hourly rate of $415 to $450.[201]  Getzoff avers these fees "are in line with those charged by top-tier law firms with intellectual property expertise in the Mountain West."[202]

---

[196] *Ellis v. University of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir.1998).

[197] *Case*, 157 F.3d at 1255.

[198] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000); *see also Case*, 157 F.3d at 1257 ("Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate.").

[199] *See Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (stating that the relevant market consists of "the area in which the litigation occurs" or "the area in which the court sits"); *accord Case*, 157 F.3d at 1256.

[200] Dkt. 148 ¶¶ 41–46.  Getzoff attests his rates increased to $765 starting in 2023, however, his firm "manually reduced the requested fees for [his] time entries on 2023 invoices down to [his] 2022 rate," as a means of avoiding further "reasonableness" objections from Martin.  *See* Dkt. 189 ¶ 11.

[201] Dkt. 149 ¶ 5.

[202] Dkt. 148 ¶ 47.

32

Additionally, SGT cites numerous recent cases in this district wherein comparable hourly rates were found reasonable for various intellectual property disputes.[203]

Martin challenges the rates claimed by SGT's counsel as unreasonable, and further argues that her lawsuit was not a complicated affair warranting specialized rates.[204]  She contends the "litigation was [mostly] limited to basic discovery disputes that could be handled by an attorney without significant experience."[205]  Rather than the rates claimed by SGT's counsel, Martin claims that her former counsel's lower rates provide a better benchmark for reasonableness.[206]  Additionally, she cites a recent case from this district, where a claimed rate of $600 per hour for a California-based attorney was found unreasonable absent "any evidence of Salt Lake City market rates."[207]

While the hourly rates claimed by SGT's counsel are substantial, they are not unprecedented.[208]  After bringing a copyright claim against SGT, Martin cannot now challenge SGT's decision to hire experienced counsel adept at handling those very claims.  And while SGT's counsel may have been more expensive than her own, "it is hard to argue with success."[209]  Over the course of the litigation, SGT had no way of knowing for certain that the

---

[203] Dkt. 147 at 5–7 (citing *ESIP Series 1, LLC v. Doterra Int'l, LLC*, No. 2:15-cv-00779-RJS, 2022 U.S. Dist. LEXIS 231525 (D. Utah Dec. 23, 2022); *Crim. Productions, Inc. v. Brinkley*, No. 2:17-cv-00550-DN, 2020 U.S. Dist. LEXIS 266864, *4 (D. Utah June 30, 2020)).

[204] *See* Dkt. 175 at 13–14.

[205] *Id.* at 14.

[206] *Id.*

[207] *See Webb*, 2022 U.S. Dist. LEXIS 78387, at *14–15.

[208] *See ESIP Series 1, LLC v. Doterra Int'l, LLC*, No. 2:15-cv-00779-RJS, 2022 U.S. Dist. LEXIS 231525 (D. Utah Dec. 23, 2022); *Waas v. Red Ledges Land Development, Inc.*, No. 2:20-cv-00580-TC-DBP, 2022 U.S. Dist. LEXIS 1323, 2022 WL 35717, at *4 (D. Utah Nov. 2, 2021) (holding that $650 was a reasonable hourly rate for partners to bill in Salt Lake City).

[209] *See Flying J Inc. v. Comdata Network, Inc.*, No. 1:96-CV-066BSJ, 2007 U.S. Dist. LEXIS 84554, at *65 (D. Utah Nov. 15, 2007) ("The fact is that [Defendant's] counsel ultimately prevailed in this proceeding, and the plaintiffs' counsel did not.  The outcome itself suggests that [Defendant] correctly invested the necessary litigation resources in its defense, while the plaintiffs somehow fell short of their own goal.").

lawsuit would terminate early rather than lead to a trial necessitating full preparedness.  It follows that many of the expenses accrued over the past two years relate to counsel's review of Martin's productions, which required some specialized knowledge of copyright law and other areas relevant to the merits of the case.[210]  It was also reasonable for SGT's counsel to continue shepherding the defense, even as it pertained to discovery disputes and requests for sanctions, as the prospect of a trial on the merits continued until the court granted terminating sanctions on December 28, 2022.  Nevertheless, SGT exercised prudent billing judgment, assigning less expensive associates to handle the lion's share of the workload.[211]  On balance, the court finds that the claimed hourly rates are reasonable based on the skill, experience, and reputation SGT's counsel brought to bear on a difficult case.[212]

### iii. Litigation Expenses

SGT has submitted adequate documentation for the following out-of-pocket expenses incurred during fact discovery and while litigating sanctions against Martin: "research costs; filing fees; costs for hosting a Relativity document database used to maintain, process, and review documents received and produced; deposition and court reporter costs; and costs incurred for necessary travel to hearings" before the court.[213]  The total comes to $12,551.34,[214] to which

---

[210] See Dkts. 148-1–3; see also Dkt. 176 at 14–17.

[211] See Dkts. 148-1–23; Dkt. 148 ¶¶ 43, 45 (stating that "day-to-day work on the case was supplied by" associates Simler and Seewald).

[212] See Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); see also Case, 157 F.3d at 1257 ("The quality of the lawyer's performance in the case should also be considered.").

[213] Dkt. 147 at 7; Dkt. 148 ¶ 40.

[214] Dkt. 147 at 7; Dkt. 147 ¶¶ 13–14.

Martin has not objected.[215]  The court has closely reviewed the Holland & Hart's monthly billing records and finds these disbursements are reasonable and legitimate expenses that would normally be charged to paying clients.  However, the court must deduct $437.50 for expenses that were not necessarily related to Martin's misconduct, such as Relativity fees for SGT's own productions and fees for a *pro hac vice* application.  SGT is therefore awarded $12,113.84 in litigation expenses.

### iv.  Post-Judgment Fees

In addition to the substantial attorneys' fees and expenses sought under Rule 37(b)(2)(C), SGT seeks recovery of fees for the time counsel spent pursuing this award.[216]  It is well-established in the Tenth Circuit that a party may recover such fees accrued during the process of seeking fees.[217]  "However, the award of fees for the preparation of the fee application is not without limits."[218]  A district court has broad discretion to deny an award for hours spent pursuing fees if the fee petitioner was unsuccessful or if the "underlying claim for fees was unreasonable."[219]

Martin's efforts to shift the attorney fee sanction to her former counsel and dispute the reasonableness of SGT's fee application have prompted extensive post-judgment briefing from SGT.[220]  While Martin counters that SGT could have sat on the sidelines while she attempted to

---

[215] *See* Dkt. 175 at 11–18 (reflecting objections against SGT's attorneys' fees, but not the requested expenses); Dkt. 176 at 18 ("Plaintiff appears to concede that SGT's request for expenses is proper and reasonable.").

[216] *See* Dkt. 188 at 2.

[217] *See Cummins v. Campbell*, 44 F.3d 847, 855 (10th Cir. 1994) ("The Tenth Circuit generally allows recovery of fees for an attorney's work in seeking attorney's fees.").

[218] *Id.*

[219] *Id.*

[220] *See* Dkt. 176; Dkt. 186; Dkt. 188.

shift the fees to her former counsel,[221] SGT had no obligation to be a neutral party.  On the contrary, SGT was fully entitled to defend a hard-fought outcome against the reconsideration sought by Martin.[222]  Moreover, SGT's post-judgment briefing was generally limited to the novel arguments raised by Martin, ranging from the procedural vehicles she used to seek reconsideration to her surprising post-hoc explanation for spoliation.[223]  At the same time, SGT declined to take sides on whether Martin or her counsel should pay the Rule 37(b)(2)(C) fees.[224] Instead, it merely sought to prevent the case from becoming a sideshow malpractice trial and focus on the task at hand—"a simple accounting of SGT's attorneys' fees."[225]

While the court will reduce SGT's requested fees and expenses by $26,809.50, this was neither the result of Martin's briefing nor an indication that SGT's "underlying claim for fees was unreasonable."[226]  The only reductions deemed necessary herein are the mandatory reductions for fees and expenses not caused by Martin's misconduct, taken *sua sponte* by the court to comply with the requirements of Rule 37(b)(2)(C).  By and large, this Order vindicates SGT's request for attorneys' fees and expenses.[227]  And "[i]t is obviously fair to grant a fee for

---

[221] *See* Dkt. 192 at 1 ("The court should not award any supplemental fees, because SGT chose to incur significant additional fees by litigating issues that do not affect its rights.").

[222] *See* Dkt. 175; Dkt. 179.

[223] *See* Dkt. 176 at 5–7 (objecting to Martin's attempt to prompt "a mini malpractice trial"), 8–12 (objecting to the unusual procedural vehicle for Martin's request for relief), 12–20 (supporting its fee request); Dkt. 186 at 2–3 (arguing that Martin's Motion is jurisdictionally barred given her pending appeal), 3–8 (arguing that Martin's arguments for post-judgment relief do not meet the threshold for extraordinary relief under either Rule 54(b) or 60(b)(6)).

[224] *See* Dkt. 176 at 6.

[225] *Id.* at 5–7.

[226] *See Cummins*, 44 F.3d at 855.

[227] *See Valenzuela v. Coleman*, No. 18-cv-00329-CMA-STV, 2022 U.S. Dist. LEXIS 120009, at *53 (D. Colo. July 7, 2022) ("In this case, the Court finds that reducing fees for hours spent on Plaintiff's fee request is not warranted because Plaintiff was largely successful in his Motion for Attorney's Fees and the request was not unreasonable." (internal quotation marks and citation omitted)).

time spent litigating the fee issue . . . since it [was] the adversary who made the additional work necessary."[228]

As with its request for Rule 37(b)(2)(C) expenses, SGT has presented meticulous records demonstrating its entitlement to the requested post-judgment fees, which are reasonably limited and evidence appropriate billing judgment by counsel.  SGT's claimed hours are also reasonably constrained, reflecting about ninety hours of work for a complex post-judgment dispute with no less than six substantive briefs filed by Martin over the past few months.[229]  Under these circumstances, the court concludes that SGT's post-judgment fee request is reasonable.

## CONCLUSION

For the foregoing reasons, Martin's Motion for Reconsideration or Relief from Judgment is DENIED and SGT is awarded $205,310.29 in attorneys' fees and expenses.

SO ORDERED this 22nd day of May, 2023.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[228] *Glass v. Pfeffer*, 849 F.2d 1261, 1266 n.3 (10th Cir. 1988) (internal quotation marks and citation omitted).

[229] *See* Dkt. 169 [SEALED]; Dkt. 175; Dkt. 179; Dkt. 190; Dkt. 192; Dkt. 193.